JOHN H. SHIPPEE *v.* MARY MARGUERITE SHIPPEE.

*George R. Scammon* and *Lindsey R. Brigham* (*Mr. Brigham* orally), for the plaintiff.

*Edgar A. Blanchard* (by brief and orally), for the defendant.

JOHNSTON, J.   No question is raised concerning the jurisdiction of the parties to the divorce action that was brought in California.

Nor can there be any doubt of the power of the Superior Court in that state to enter the *nunc pro tunc* decree that it did as of October 24, 1945.   "Whenever either of the parties in a divorce action is, under the law, entitled to a final judgment, but by mistake, negligence or inadvertence the same has not been signed, filed or entered, if no appeal has been taken from the interlocutory judgment or motion for a new trial made, the court, on the motion of either party thereto or upon its own motion, may cause a final judgment to be signed, dated, filed and entered therein granting the divorce as of the date when the same could have been given or made by the court if applied for.   The court may cause such final judgment to be signed, dated, filed and entered nunc pro tunc as aforesaid, even though a final judgment may have been previously entered where by mistake, negligence or inadvertence the same has not been signed, filed or entered as soon as it could have been entered under the law if applied for.   Upon the filing of such final judgment, the parties to such action shall be deemed to have been restored to the status of single persons as of the date affixed to such judgment, and any marriage of either of such parties subsequent to one year after the granting of the interlocutory judgment as shown by the minutes of the court, and after the ʼfinal judgment could have been entered under the law if applied for, shall be valid for all purposes as of the date affixed to such final judgment, upon the filing thereof."   Deering, Civil Code of California, 1941, *s.* 133.   This statute has been construed in California and elsewhere liberally to effect its purpose.   *Macedo* v. *Macedo*, 29 Cal. A. (2d) 387; *Estate of Hughes*, 80 Cal. A. (2d) 550; *Bannister* v. *Bannister*, 181 Md. 177.

The case of *Willson* v. *Superior Court*, 84 Cal. A. (2d) 185 is not contrary to the construction of the statute claimed.   It related to an interlocutory decree and held that the Superior Court did not have the power to enter an interlocutory decree of divorce *nunc pro tunc* as of the date it was granted, when an interlocutory decree was already of record.

The validity of the marriage ceremony performed in New York on April 5, 1946, depends upon the law of that state.   Restatement, Conf. of Laws, *s.* 121.

The judgment of the Superior Court of California entered May 13, 1948 that the parties to that action were finally divorced as of October 24, 1945 is conclusive upon all other courts including those of New

York. "With the exception pointed out in the previous section, as to intervening equities of third persons, a judgment previously rendered but subsequently entered *nunc pro tunc* must be everywhere received and enforced in the same manner as though entered at the proper time." 1 Freeman, Judgments (5th *ed.*) 263. See also, 49 C. J. S. 256.

In 2 Schouler, Marriage, Divorce, Separation and Domestic Relations (6th *ed.*), s. 1976, under the caption, "Effect of Foreign Decree Entered Nunc Pro Tunc," it is stated: "Where a judgment is not entered properly through error the court may later order judgment to be entered *nunc pro tunc* to validate a marriage made in reliance on it." In support of this statement, the author cites *Mock* v. *Chaney*, 36 Colo. 60. This was a suit for partition to secure the property rights of a widow. The court stated that the only question was whether the plaintiff was the widow of the deceased. "This woman was actually divorced from her husband in the year 1891. The court pronounced the judgment at that time, and, in the year 1901, he corrected his records so as to have them contain the judgment which he pronounced in the year 1891. The rights of the parties to the Minnesota suit were established at the time the judgment was pronounced." *Id.*, 65. The plaintiff in the Colorado action and the deceased were married in New Mexico in 1899. The *nunc pro tunc* decree in Minnesota was not handed down until after the death of the husband. It was held by the Colorado court that the marriage was valid. See also, 2 Bishop, Marriage, Divorce and Separation, 283.

The case of *Giuliano* v. *Giuliano*, 297 N. Y. S. 238, holds that it is not contrary to the public policy of New York to recognize a decree of divorce entered in a West Virginia court *nunc pro tunc* and that such decree is binding upon the courts of New York. A second marriage in the state of New York was held valid, although a previous divorce in West Virginia was made final by a *nunc pro tunc* decree in the latter state that was not entered until three years after the divorce and one year after the second marriage in New York. The court said: "It was entered in West Virginia in 1935, *nunc pro tunc* as of August, 1932 which was an adjudication of that court that the divorce should date as of 1932. We may not question the procedure of the West Virginia court. . . . Its decree is binding as of the date it fixed." *Id.*, 242, 243. The case of *Merrick* v. *Merrick*, 266 N. Y. 120, relied upon by the plaintiff, was distinguished as not being in point, since a required modification of a divorce decree had not there been made prior to the second marriage, nor had the facts been found upon which such a decree would depend. "An order could not be made *nunc pro*

*tunc* recording a fact as of a prior date when that fact did not then exist." *Giuliano* v. *Giuliano, supra,* 243. *Jackman* v. *Jackman,* 258 N. Y., App. Div. 838, in which case a motion for leave to appeal was denied, 282 N. Y. 808, also indicates that it is not contrary to any public policy in the State of New York to grant a *nunc pro tunc* decree validating a second marriage.

Since the judgment of the Superior Court of California declaring the divorce of the defendant to be effective as of October 24, 1945 is conclusive upon all other courts, it follows that the marriage of the parties on April 5, 1946, should be declared valid. There is no public policy in this state contrary to such result. *Tuttle* v. *Tuttle,* 89 N. H. 219.

*Case discharged.*

All concurred.