[No. 1278-3.    Division Three.    December 30, 1975.]

*In the Matter of the Estate of* ELDON ARTHUR STORER. ANNA G. STORER, *Appellant,* v. ELZORA STORER, ET AL, *Respondents.*

*Lawrence Cary Smith*, for appellant.

*Fred L. Stewart* and *McNally & Stewart,* for respondents.

MUNSON, J.—Anna Storer appeals from the denial of her request to be appointed administratrix of the estate of Eldon Arthur Storer, pursuant to RCW 11.28.120,[1] and from the denial of her request for a family allowance as provided in RCW 11.52.040.[2]

The issues are whether: (1) full faith and credit need be given to a California nunc pro tunc divorce decree; (2) the California nunc pro tunc decree of divorce legalized the ceremonious marriage between Anna G. Dodson and Eldon Storer; and (3) the nunc pro tunc decree served to divest otherwise vested interests held by the heirs of the deceased pursuant to RCW 11.04.250[3] and RCW 11.04.290.[4] At the time of Eldon Storer's death, his heirs consisted of his mother and his "spouse" Anna.

---

[1]"Persons entitled to letters. Administration of the estate of the person dying intestate shall be granted to some one or more of the persons hereinafter mentioned, and they shall be respectively entitled in the following order:

"(1) The surviving husband or wife, or such person as he or she may request to have appointed."

[2]"Further allowance for family maintenance. In addition to the awards herein provided for, the court may make such further reasonable allowance of cash out of the estate as may be necessary for the maintenance of the family according to their circumstances, . . ."

[3]"When a person dies seized of lands, tenements or hereditaments, or any right thereto or entitled to any interest therein in fee or for the life of another, his title shall vest immediately in his heirs or devisees, subject to his debts, family allowance, expenses of administration and any other charges for which such real estate is liable under existing laws. No administration of the estate of such decedent, and no decree of distribution or other finding or order of any court shall be necessary in any case to vest such title in the heirs or devisees, but the same shall vest in the heirs or devisees instantly upon the death of such decedent: *Provided,* That no person shall be deemed a devisee until the will has been probated. The title and right to possession of such lands, tenements, or hereditaments so vested in such heirs or devisees, together with the rents, issues and profits thereof, shall be good and valid against all persons claiming adversely to the claims of any such heirs, or devisees, excepting only the personal representative when appointed, and persons lawfully claiming under such personal representative; and any one or more of such heirs or devisees, or their grantees, jointly

Anna G. Dodson on August 19, 1963, obtained an interlocutory decree of divorce from Lawrence E. Dodson in California. Under the terms of the decree either party, following the expiration of 1 year, could apply to the court for a final decree. Prior to entry of the final decree Anna came to Colville, Washington, and went to work as a housekeeper for Eldon Storer. On December 21, 1969, Anna and Eldon were ceremoniously married; a final decree had not been entered in the Dodson divorce; about mid-1973 they separated and Anna went to Oregon. While they were separated, Eldon Storer died intestate on June 3, 1974.

Eighteen days following Eldon's death, on June 21, 1974, the Superior Court of California entered a final decree of divorce nunc pro tunc as of August 19, 1964. The final decree had not been entered earlier because Anna had not paid her California attorney. Following Eldon's death, she borrowed sufficient funds from her brother to pay her lawyer, who then obtained the final decree.

In the interim, Eldon's mother had petitioned for appointment as administratrix of the estate on June 12, 1974. Anna Storer sought to be appointed administratrix 2 weeks later. The court, after hearing on both petitions, concluded that Anna was not the surviving "spouse," denied her request for a family allowance, and appointed Eldon's mother as administratrix of the estate. This appeal followed.

1

Respondents contend the decree is not entitled to full faith and credit because, in California, the failure to pay

---

or severally, may sue for and recover their respective shares or interests in any such lands, tenements, or hereditaments and the rents, issues and profits thereof, whether letters testamentary or of administration be granted or not, from any person except the personal representative and those lawfully claiming under such personal representative."

"'RCW 11.04.250 through 11.04.290 shall apply to community real property and also to separate estate; and upon the death of either husband or wife, title of all community real property shall vest immediately in the person or persons to whom the same shall go, pass, descend or be devised, as provided in RCW 11.04.015, subject to all the charges mentioned in RCW 11.04.250."

attorneys' fees does not constitute "mistake, negligence or inadvertence," necessary to the entry of a nunc pro tunc decree as provided by Cal. Civ. Code § 4515 (West 1972).[5]

The California nunc pro tunc decree is entitled to full faith and credit, subject to collateral attack only for want of jurisdiction over the parties or subject matter or a claim that jurisdiction was obtained fraudulently. *In re Rankin*, 76 Wn.2d 533, 458 P.2d 176 (1969); *Industrial Fin. Co. v. Lovell*, 9 Wn. App. 829, 515 P.2d 1304 (1973). Whether the failure to pay attorneys' fees in California constitutes "mistake, negligence or inadvertence," is a question of statutory interpretation reserved to the courts of California and may not be considered in this state by collateral attack. There is no claim that the California court was without jurisdiction, either of the parties or of the subject matter, nor that jurisdiction was fraudulently obtained; the nunc pro tunc decree is entitled to full faith and credit.

---

[5]"Whenever either of the parties in a proceeding for dissolution of the marriage is, under the law, entitled to a final judgment, but by mistake, negligence or inadvertence the same has not been signed, filed and entered, if no appeal has been taken from the interlocutory judgment or motion made for a new trial to annul or set aside the judgment or for relief under Chapter 8 (commencing with Section 469) of Title 6 of Part 2 of the Code of Civil Procedure, the court, on the motion of either party thereto or upon its own motion, may cause a final judgment to be signed, dated, filed and entered therein granting the divorce as of the date when the same could have been given or made by the court if applied for. The court may cause such final judgment to be signed, dated, filed and entered nunc pro tunc as aforesaid, even though a final judgment may have been previously entered where by mistake, negligence or inadvertence the same has not been signed, filed or entered as soon as it could have been entered under the law if applied for. Upon the filing of such final judgment, the parties to such action shall be deemed to have been restored to the status of single persons as of the date affixed to such judgment, and any marriage of either of such parties subsequent to six months after the date of service of a copy of the summons and petition upon, or appearance by, the respondent spouse, as shown by the minutes of the court, and after the final judgment could have been entered under the law if applied for, such shall be valid for all purposes as of the date affixed to such final judgment, upon the filing thereof."

### 2

Respondents contend that even if the nunc pro tunc decree is given full faith and credit, the marriage between Anna and Eldon, having occurred while she remained legally married to her prior husband, was void ab initio. RCW 26.04.020; *Barker v. Barker*, 31 Wn.2d 506, 197 P.2d 439 (1948); *Beyerle v. Bartsch*, 111 Wash. 287, 190 P. 239 (1920); *cf. In re Estate of Gallagher*, 35 Wn.2d 512, 213 P.2d 621 (1950). The contention, in and of itself, is correct. One of the principal purposes in adoption of Cal. Civ. Code § 4515 (West 1972) was, however, to "validate otherwise void marriages and thus relieve the parties to such marriages from the stigma and other consequences of bigamous relationships . . ." *In re Estate of Hughes*, 80 Cal. App. 2d 550, 553, 182 P.2d 253, 256 (1947). The legal effect of providing full faith and credit to the California nunc pro tunc decree was to terminate the original marriage of Anna as of August 19, 1964, thereby legalizing her otherwise void and bigamous marriage to Eldon Arthur Storer.

### 3

According full faith and credit to the California decree, Anna Storer is the surviving spouse of Eldon Storer. As provided in the California statute, the entry of the nunc pro tunc decree "shall be valid for *all* purposes as of the date affixed to such final judgment, upon the filing thereof." (Italics ours.) Therefore, Anna Storer was: (1) entitled to the appointment as administratrix of his estate; and (2) a lawful heir of the deceased as of the date of his death and entitled to the vested interest provided for by RCW 11.04.250 and RCW 11.04.290.

In so concluding, we decline to adopt the position set forth in *Graves v. Carter*, 207 Ga. 308, 61 S.E.2d 282 (1950). In *Graves*, the court held that the retroactive effect of the California act could not alter otherwise vested rights arising prior to the entry of the final decree. *In re Estate of Carter*, 14 Wn. App. 271, 540 P.2d 474 (1975), properly concludes that inheritance held by a third person does not constitute a vested interest protected against the entry of a

nunc pro tunc judgment. *Cf. State ex rel. Tufton v. Superior Court,* 46 Wash. 395, 90 P. 258 (1907); *In re Estate of Casimir,* 19 Cal. App. 3d 773, 97 Cal. Rptr. 623 (1971). The equitable considerations as to the propriety of the entry of the nunc pro tunc decree, reviewed by the court in *In re Estate of Carter, supra,* are not reviewable here. Those considerations were properly before the California trial court and are reviewable only in the appellate courts of that state.

Judgment is reversed with directions to proceed in accordance with this opinion.

McINTURFF, C.J., and GREEN, J., concur.

Petition for rehearing denied February 10, 1976.

Review denied by Supreme Court April 23, 1976.