[No. 6232-1-II. Division Two. March 26, 1984.]

*In the Matter of the Estate of* JAMES G. SHIPPY,
INGE SHIPPY, *Appellant.*

*Russell W. Pritchett, John S. Riper,* and *Sarah Weaver,* for appellant.

*Carol Hepburn,* for respondent.

REED, J.—Inge Shippy appeals a trial court decision which held that she is not the surviving spouse of decedent, James Shippy, because their marriage was void under Alaska law. We reverse, holding that, in the circumstances of this case, Washington law applies to determine the validity of the marriage.

On February 5, 1972, James Shippy executed his last will and testament, leaving his entire estate to his then wife, Marion, if she survived him. Otherwise, his estate would go to his children, Dorothy Coe and Thomas Shippy.

On January 9, 1973, Marion Shippy obtained an interlocutory decree of divorce in Alameda County, California. In that proceeding both parties relinquished all claims to the other's estate. A final decree of divorce, however, was not entered until 8 years later, on November 16, 1981. Pursuant to a California statute, the decree was then entered nunc pro tunc as of May 14, 1973.[1]

---

[1]Cal. Civ. Code § 4515 (West 1983) (formerly § 133) reads as follows:

"Whenever either of the parties in a proceeding for dissolution of the marriage is, under the law, entitled to a final judgment, but by mistake, negligence or inadvertence the same has not been signed, filed and entered, if no appeal has been taken from the interlocutory judgment or motion made for a new trial to annul or set aside the judgment . . ., the court, on the motion of *either party thereto* or upon its own motion, may cause a final judgment to be signed, dated, filed and entered therein granting the divorce as of the date when the same could have been given or made by the court if applied for. The court may cause such final judgment to be signed, dated, filed and entered nunc pro tunc as aforesaid, even though a final judgment may have been previously entered where by mistake, negligence or inadvertence the same has not been signed, filed or entered as soon as it could have been entered under the law if applied for. Upon the filing of such final judgment, the parties to such action shall be deemed to have been restored

In the interim in 1976, James Shippy married Inge in Valdez, Alaska. On July 15, 1981, James Shippy died in a plane crash in Alaska. At the time of his death, he and Inge were residents of Kitsap County, Washington, and she commenced probate proceedings there. The children intervened, asking that their father's will be admitted to probate.

The court held the will did not control because, although Marion survived James, she had relinquished all claims to his estate. The court then declared that because Inge's marriage to James was void under Alaska law, she was not his surviving spouse and that all property passed to decedent's children. Inge appeals from these latter two determinations.

■ Although the parties did not approach it as such, the issue presents a classic conflict of laws (choice of law) question. Two views exist as to the retroactive effect of a nunc pro tunc decree on an intervening second marriage. A majority of states, including Washington, hold that a nunc pro tunc decree will validate a subsequent marriage entered into by one of the divorced parties between the time of the interlocutory decree and the final decree. *See, e.g., In re Estate of Storer*, 14 Wn. App. 687, 544 P.2d 95 (1975); *Cahoon v. Pelton*, 9 Utah 2d 224, 342 P.2d 94 (1959); *Shippee v. Shippee*, 95 N.H. 450, 66 A.2d 77 (1949). A few jurisdictions, however, hold that a nunc pro tunc decree does not validate an otherwise void marriage. *Graves v. Carter*, 207 Ga. 308, 61 S.E.2d 282 (1950); *Karpuk v. Karpuk*, 177 Misc. 729, 31 N.Y.S.2d 769 (1941). *See generally* Annot., *Entering Judgment or Decree of Divorce Nunc Pro Tunc*, 19 A.L.R.3d 648 (1968). Alaska courts have not

---

to the status of single persons as of the date affixed to such judgment, and any marriage of either of such parties subsequent to six months after the date of service of a copy of the summons and petition upon, or appearance by, the respondent spouse, as shown by the minutes of the court, and after the final judgment could have been entered under the law if applied for, such shall be valid for all purposes as of the date affixed to such final judgment, upon the filing thereof." (Italics ours.)

addressed this issue.

In *In re Estate of Storer, supra,* the court held that full faith and credit should be accorded to a California nunc pro tunc divorce decree so as to validate an otherwise void bigamous subsequent Washington marriage. Inge Shippy urges us to follow *Storer* and hold that the entry of the California nunc pro tunc decree validated her otherwise void Alaska marriage. The children, however, insist we must apply the traditional rule that the validity of a marriage is governed by the law of the state in which the marriage took place.

If we consider only existing Alaska statutes, Inge's marriage to James would appear to be void. Alaska Stat. § 09.55.080 (1962) states: "[A] subsequent marriage contracted by a person during the life of a former husband or wife which marriage has not been annulled or dissolved is void." Alaska Stat. § 25.05.021 (1983) states: "Marriage is prohibited and void if performed when (1) either party to the proposed marriage has a husband or wife living". Further, common law marriages are not valid under Alaska law. *United States v. Lustig,* 555 F.2d 737 (9th Cir. 1977); Alaska Stat. §§ 25.05.011, .261, .311 (1983). There are no Alaska decisions such as *Storer* holding that full faith and credit must be accorded to foreign nunc pro tunc decrees so as to validate subsequent marriages. Nor may we presume, as suggested by Inge, that Alaska would do so if presented with the issue.[2]

■ There are, however, exceptions to applying the traditional rule that the validity of a marriage is governed by the law of the state where the marriage was contracted. At this juncture we take note of the distinction between marriage as a status and the incidents of marriage. As stated in Restatement (Second) of Conflict of Laws, ch. 11, *Status,*

---

[2]The presumption that foreign law is the same as that of the forum is employed when there is insufficient *proof* of foreign law which is conceded to apply to some or all aspects of a controversy.

When the question is *whose* law should govern some or all aspects of the case, the issue involves a conflict of laws. *See* Restatement (Second) of Conflict of Laws § 136, *comment g* (1971); E. Scoles & P. Hay, *Conflict of Laws* § 12.19 (1984).

Introductory Note, at 231 (1971):

> In law, a status can be viewed from two standpoints. It can be viewed as a relationship which continues as the parties move from state to state, or it can be viewed from the standpoint of the incidents that arise from it. So marriage can be viewed as a relationship, namely solely from the point of view of whether a given man and woman are husband and wife. On the other hand, marriage can be viewed from the standpoint of its incidents, such as whether the man and woman may lawfully cohabit as husband and wife, the interests which the one has in the other's assets and the right of each to inherit, or to take a forced share in, the other's estate. . . .
>
> On occasion, the courts are faced with a question of pure status, namely whether, as a general proposition, there is a marital, or a legitimate, or an adoptive relationship between the parties. For example, in the case of marriage, a question of pure status may arise in an action for an annulment, in an action for a declaratory judgment that a marriage does or does not exist or in a criminal prosecution for bigamy. It is clear, however, that questions involving the incidents of a status arise more frequently than do questions which purely involve the status as such. One problem is whether a question involving the incidents of a status can properly be decided without having made a preliminary determination of whether the status does, or does not, exist. For example, can a court properly determine that a woman may inherit from the deceased as a "surviving spouse" within the meaning of its intestacy statute without having first determined that she was validly married to him under the law governing the marriage? . . . By and large, the courts have acted on the assumption that a decision of questions involving the incidents of a marriage should be preceded by a determination of the validity of the marriage. . . .

*See also* E. Scoles & P. Hay, *Conflict of Laws* §§ 13.3–13.9 (1984).

Here, we deal with the incidents of the Shippys' marriage as it affects Washington, but must determine preliminarily the validity of the status. One of the exceptions to which we have referred is that a marriage should not necessarily be invalid in other states if it would be valid under the law of

some other state having a substantial relation to the parties and the marriage. In such cases, the rule is that the marriage would not be invalid unless

> the intensity of the interest of the state where the marriage was contracted in having its invalidating rule applied outweighs the policy of protecting the expectations of the parties by upholding the marriage and the interest of the other state with the validating rule in having this rule applied.

Restatement (Second) of Conflict of Laws § 283, comment *i* (1971). *See also* comment *l.* Further, section 284 of the Restatement provides as follows:

> Incidents of Foreign Marriage
> A state usually gives the same incidents to a foreign marriage, which is valid under the principles stated in § 283, that it gives to a marriage contracted within its territory.

Domicile of the parties is one factor tending to create a substantial relation between a state and the parties and the marriage. *Cf.* Restatement (Second) of Conflict of Laws § 283, comment *j* (1971). Although the domicile of the Shippys at the time of their Alaska marriage is not established in the record, we find Washington has a substantial relation to the parties and the marriage by virtue of their residence in Washington at the time of his death, the existence of property in Washington, and the pendency of probate proceedings in Washington. Here, the Washington probate court necessarily is concerned with matters such as (1) who is entitled, as "surviving spouse," to administer upon community property, if any, under RCW 11.28.030; (2) who is the "surviving spouse" under the provisions for family support, RCW 11.52.010 *et seq.*; and (3) who is the "surviving spouse" for purposes of descent and distribution under RCW 11.04.015 *et seq.* Further, the record reflects that the extent of Alaska's relation to the parties and the marriage is confined to the contracting of the marriage in Alaska and James Shippy's death in Alaska. The need to resolve conflicting claims to property situated in Washing-

ton and belonging to a deceased Washington resident provides Washington with a dominant interest in the validity of this marriage. Consequently, the law of Washington giving retroactive validating effect to a nunc pro tunc decree should apply unless Alaska has a clearly contrary policy.

No such policy has been demonstrated. The Alaska statutes themselves are too general, we think, to evidence a strong contrary policy. Washington statutes also declare such marriages void ab initio, yet our courts recognize the validating effect of a foreign nunc pro tunc decree. *In re Estate of Storer, supra.* Therefore, in light of this state's strong present interests, and to protect the expectations of James and Inge, we will apply the rule of *In re Estate of Storer* to give validating effect to the California nunc pro tunc decree and validate Inge's otherwise void marriage. Consequently, as the "surviving spouse" of James Shippy, Inge is entitled to be treated as such for all purposes in the administration and distribution of his estate.

The decision of the trial court is reversed and remanded with directions to reconsider its appointment of a coadministrator in light of this opinion.[3]

WORSWICK, A.C.J., and PETRIE, J., concur.

---

[3]Upon the insistence of the children, their attorney was appointed coadministrator with Inge. She also challenged this order.