Marshall, C. J.
 

 The first problem for solution in this cause is presented by the cross-petition in error filed by the defendants in error, and by the bill of exceptions and transcript of all the testimony filed by the defendants in error in this cause, in which it is sought to show that the findings of fact in the Court of Appeals are not sustained by the weight of the evidence, and in which it is further sought to have this court disregard the findings of fact in the Court of Appeals and to consider and weigh the testimony as presented by the entire record. The authority for making findings of fact is found in Section 12252, General Code, as follows:
 

 “On application of a party excepting to a ruling or decision of the Court of Appeals during the
 
 *615
 
 trial, or on motion for a new trial, such court shall find from the evidence and state on the record the facts upon which the alleged error arises, or which may be material in determining whether or not error has intervened.”
 

 It is important therefore to determine at the outset whether this court is bound to look to the entire record to ascertain whether the Court of Appeals was justified in its findings of fact.
 

 This court has so often and so uniformly declared in its decisions, during the course of hearings in open court, and in its published rules of practice, that it will not weigh the evidence, that parties will not be heard at this time to urge a different rule.
 
 Watson
 
 v.
 
 State,
 
 39 Ohio St., 123;
 
 Finley
 
 v.
 
 Whitley,
 
 46 Ohio St., 524, 22 N. E., 640;
 
 McLaughlin
 
 v.
 
 Wheeling & Lake Erie Ry. Co.,
 
 61 Ohio St., 279, 55 N. E., 825; and
 
 Krause
 
 v.
 
 Morgan,
 
 52 Ohio St., 662, 44 N. E., 1140.
 

 Notwithstanding our having reached the conclusion that this court is not bound to look to the record beyond the findings of fact, we have nevertheless carefully examined this voluminous record to ascertain whether there is any evidence upon which the findings made could properly be based. While there is much contradiction in the evidence, it is found that Killian Eichom himself was called by the plaintiffs below for purposes of cross-examination, and examined at length, and as a part of the case in chief was examined by his own counsel, and without objection on the part of opposing counsel was examined beyond the scope of the cross-examination of the opposing counsel, and that later as a part of his own defense he was
 
 *616
 
 again called to the stand and examined at length without objection on the part of opposing counsel. No question is therefore made in this record as to his competency as a witness, and none can therefore be made as to the admissibility thereof. If believed, his testimony makes a clear case of having been acknowledged by John F. Eichom as his son and the son of Barbara Eichorn, his wife. The testimony of Rudolph Kurz is equally clear, and his testimony is disinterested unless it should be considered otherwise because of the fact that Kurz was the brother of Killian Eichorn’s wife. The witness Emma Henry must be considered disinterested from every standpoint, and she also testified clearly to John F. Eichom having acknowledged Killian Eichom as his son. The same is true of the testimony of Lydia Eberspacher, John Siefert, and Mr. Palmer. This being in our opinion the principal question of fact in the case, and finding that the testimony of several witnesses supports the findings made by the Court of Appeals, we do not deem it our province or our duty to weigh the conflicting evidence to determine whether or not the findings are supported by the weight of the evidence. The legal propositions involved in this case will be disposed of upon the theory that the findings of the Court of Appeals are true.
 

 An examination of the findings of fact will disclose not only a repeated acknowledgment by J. F. Eichom that Killian Eichom was his son, but many other facts and circumstances are disclosed strongly tending to corroborate the truth of the matter thus acknowledged. Killian Eichorn for a short
 
 *617
 
 tira© made his home in Germany with the mother and stepfather of J. F. Eichom, during which time he was known as Killian Barteline. Again, when Killian was about ten years old, J. F. Eichorn sent to Germany and procured a picture of Killian Eichorn, which he framed and hung in the home where he and his family resided. Again, J. F. Eichorn made repeated attempts to get Killian to come to this country, and sent money to defray his expenses. Upon Killian’s arrival at Youngstown, J. F. Eichom met him, in company with his two daughters. He took him into his own home, where he lived as one of the family, and gave him his own name. Upon Killian’s marriage, the banns were published in the name of Eichom in the presence of J. F. Eichorn. None of these things, nor all of them combined, would be sufficient without the acknowledgment, but all of them are strongly corroborative of the acknowledgment in establishing the paternity. The repeated acknowledgments supported and corroborated by the facts and circumstances above enumerated, must, if not disproved, establish not only the acknowledgment itself, but also the further fact that J. F. Eichorn was the father of Killian Eichorn.
 

 While verbal admissions should be received in evidence with caution, yet the rule is well-settled that admissions deliberately made and clearly proven are very strong and satisfactory evidence against the party making them. The first 12 findings of fact must be held to establish both the acknowledgment and the paternity, and the status of Killian Eichorn must thereby be held to have become fixed as the legitimate son of J. F. Eichorn.
 
 *618
 
 The question therefore arises, upon consideration of the thirteenth and seventeenth findings, whether the subsequent denial of J. F. Eichorn that Killian Eichom was his son can have the effect of destroying the status theretofore established.
 

 The admissions and acknowledgments were properly received in evidence because they were declarations against interest, but it does not follow that declarations denying the paternity, which must be held to be declarations in J. F. Eichom’s favor, would be admissible or entitled to any probative force whatever. This has been so held in the following cases:
 
 Britt
 
 v.
 
 Hall,
 
 116 Iowa, 564, 90 N. W., 340;
 
 Brock
 
 v.
 
 State,
 
 85 Ind., 397; and
 
 Binns
 
 v.
 
 Dazey,
 
 147 Ind., 536, 44 N. E., 644.
 

 It is urged by counsel for defendants in error that, even if it be admitted that there is evidence of J. F. Eichom having acknowledged the paternity, there is no proof of the fact of the paternity itself. Counsel have not, however, pointed out to the court what degree or what character of proof should be required to establish the paternity. In the very nature of things such a proposition is not capable of demonstration. If the court should lay down a rule requiring resort to such technical niceties, it would be impossible to prove paternity in any case. Absolute proof could only be made by showing access of the alleged father and also proof of the impossibility of access of any other man. History only records one such illustration, viz. Cain and Abel. If a man and woman should be placed under guard for a natural period of gestation, there would still be a possibility of some suspicion attaching to the guard. Or if a
 
 *619
 
 man and woman were placed upon some lonely island, we conld not disprove the presence of some lurking savage. It is against sound public policy to resort to such technicalities, and no valid reason is urged why an admission of this fact, if not otherwise disproved, should not be accepted as it would be in proof of any other fact.
 

 Many of the states of the Union have enacted statutes designed to legitimatize children born out of wedlock, and in many states the courts have rendered decisions construing the same and defining and limiting the proof necessary to be made, but these statutes differ materially, and the decisions are not helpful. An examination of the many cases cited and some not cited discloses that, while in many states it is necessary to establish paternity, yet in no case where the governing statute is similar to the Ohio statute is it stated that clear and unequivocal acknowledgment is not evidence of paternity, or that such acknowledgment is not sufficient proof in the absence of rebutting testimony.
 

 In the complete record of this case, introduced by defendants in error, the testimony of the daughter is found, which, if competent, would tend to show nonaceess. But this testimony was hearsay and was unnoticed by the Court of Appeals in its findings of fact. "We have no means of knowing whether the Court of Appeals disregarded this testimony on the ground of it being hearsay, or whether it was a refusal to give any credence to the testimony of Mrs. Burrows, who thus sought to prove that her mother was a common character. This record clearly showing the finding that J. F.
 
 *620
 
 Eichorn repeatedly acknowledged Killian as his son, and the record showing’ no competent evidence of nonaccess, we are not called upon to determine whether a clear unequivocal acknowledgment would establish the status of legitimacy in the face of clear evidence of nonaccess.
 

 While we agree that the language of Section 8591, General Code, makes it necessary to establish the paternity, we are of the opinion that the first 13 findings of the Court of Appeals are sufficient to establish not only the acknowledgment, but also the fact of the paternity, and we therefore hold that the conclusions of law are not in harmony with the findings of fact and that the judgment of the Court of Appeals should therefore be reversed. This court will therefore render the judgment which the Court of Appeals should have rendered upon the findings of fact made in that court, adjudging Killian Eichorn to be the owner, as heir at law of John F. Eichorn, deceased, of the undivided one-third interest in the real estate in the petition described.
 

 Judgment reversed.
 

 Johnson, Hough, Robinson, Jones, and Matthias, JJ., concur.
 

 Wanamaker, J., concurs in the judgment.