[No. 34279.   Department One.   December 18, 1958.]

*In the Matter of the Estate of* JOHN DOUGLAS HOOPER,
*Deceased.*

MYRTLE JEAN HOOPER *et al., Appellants,* v. LAURA GOODALL
MENAGE, *Respondent.*[1]

[1]Reported in 332 P. (2d) 1077.

*Monheimer, Schermer & Mifflin,* and *Melville Monheimer, Jr.,* for appellants.

*H. Joel Watkins* and *F. Robert Lee,* for respondent.

HUNTER, J.—This is an appeal from a decree of distribution entered in the superior court of King county adjudging the respondent Laura Goodall Menage to be the sole heir of John Douglas Hooper, deceased, and ordering the distribution of his entire estate to her.

John Douglas Hooper died intestate on February 10, 1954, in Seattle, Washington, leaving an estate in King county subject to administration. Kathleen Coffin, a long-time friend of the decedent, petitioned and was appointed the administratrix of his estate. Thereafter, the respondent Laura Goodall Menage and the appellants Myrtle Jean Hooper and Robert Pinckney Hooper appeared claiming they were the rightful heirs of the decedent and entitled to his entire estate. The administratrix was unable to determine the merits of the respective claims of the parties and therefore, in her final account, report and petition for distribution, petitioned the court for a citation directing the respective claimants to make proof of heirship with the decedent. The citation was issued on February 3, 1955.

Appellants, the surviving wife and son of one Otto A. B. Hooper, in their answer to the citation, alleged they were entitled to the entire estate of the decedent as the heirs of Otto A. B. Hooper; that he was the half brother of the decedent who had passed away subsequent to him on February 21, 1954, in Baltimore, Maryland. Appellants' claim was based on the allegation *that the father of the decedent and the father of Otto A. B. Hooper was one and the same person.*

In answering the citation, respondent alleged that she was the maternal aunt of the decedent and the closest living heir; that neither she nor the decedent, prior to his death,

was aware of any other living relatives; and that she should inherit his entire estate. She alleged further that the real property which constituted an asset of the estate had been devised to the decedent by his mother and, therefore, she was entitled to this as ancestral property under Laws of 1945, chapter 72, p. 216 (RCW 11.04.100).

The respondent denied the material allegations of the appellants' answer while the appellants admitted the relationship of the respondent to the decedent.

On March 5, 1956, at the conclusion of a hearing on this matter, the court, in its oral decision, found the identity between the father of the decedent and the father of Otto A. B. Hooper had been established as one and the same person.

On May 28, 1956, the court, in its memorandum decision on claim of ancestral property, determined under Laws of 1945, chapter 72 (RCW 11.04.100) that the respondent was the only living kin of the blood of the ancestor who had devised the real property to the decedent, and was, therefore, entitled to the proceeds derived from the sale thereof.

Thereafter, the respondent filed her motion for reconsideration of the court's oral decision, and on September 14, 1956, after a hearing on the motion, the court entered findings of fact and conclusions of law in accordance with the views expressed in its oral decision. However, on January 7, 1957, upon a hearing on respondent's motion for a new trial, the court determined that it had previously reached the wrong decision and had erred when it admitted the hearsay testimony of one Mandy Boydston Chism concerning her identifying the mother of Otto A. B. Hooper's father as Sarah Jane Reed. Therefore, the court vacated certain findings and conclusions previously entered and entered findings and conclusions holding that the respondent was the sole heir of the decedent and entitled to his entire estate. Appellants' motion for a new trial was denied and the trial court entered its decree of distribution in accordance with its findings of fact and conclusions of law. This appeal followed.

Appellants contend the trial court erred in finding that they had failed to establish their relationship with the decedent.

Since the relationship of the respondent to the decedent is admitted, the appellants to prevail on this appeal must show that they sustained the burden of proving the identity of one "Robert P. Hooper" as the father of the decedent and Otto A. B. Hooper, through whom they claim.

Appellants support their contention of identity through a common ancestry beginning in Shelbyville, Illinois, where Joseph *Folkes* Hooper was born. His history is in little dispute. He was married three times and in the year 1854, during his second marriage, he moved to Arkansas. There, in 1859, Robert Pinckney Hooper, the father of Otto A. B. Hooper, was born. His mother was identified by various witnesses as "Nancy Jane Reed," "Jane Reed," "Mary Jane Reed," and "Sarah Jane Reed." Robert Pinckney Hooper was married twice. His second marriage was to Nannie M. Ridenour on February 7, 1889, and Otto A. B. Hooper was born of this union on or about September 28, 1892. Robert Pinckney Hooper deserted his wife and child in 1897 and some evidence placed him in Seattle, Washington, in the year 1898. His known occupation was that of marshal, restaurant operator, and mule trader.

The father of the decedent John Douglas Hooper was married to Isabella Goodall on July 8, 1901, in Tacoma, Washington, giving his address as Seattle, Washington. The evidence showing the lineage of Robert P. Hooper, the father of the decedent, is substantially all in one document, his marriage return, which recites the following:

"MARRIAGE RETURN   3504"
"1.  Date of license  July 8th, 1901
"2.  Full name of groom  Robert P. Hooper
"3.  Age last birthday  40
"4.  Color (a)  white
"5.  No. of groom's marriages  None
"6.  Residence  Seattle, 2703½ 1st Avenue
"7.  Birthplace (b)  Shelbeville, Ill.
"8.  Occupation  Carpenter and Engineer
"9.  Father's name  Joseph Hooper

"10. Mother's maiden name  Sara J. Reed
"11. Full name of Bride  Isabella Goodall
"12. Age last birthday  35
"13. Color (a)  white
"14. No. of bride's marriages  None
"15. Residence  Seattle, 1405 1st Ave.
"16. Birthplace (b)  Fraerburgh, Scotland
"17. Occupation  Dressmaker
"18. Father's name  John Goodall
"19. Mother's maiden name  Elizabeth Stephen
"20. Date of Marriage  July 8th, 1901
"21. Place of Marriage  Tacoma, Washington
"22. By whom married, and official station
        H. L. Garretson, Justice of the Peace
"23. Names of witnesses and their residences
        No. 1  W. M. Friedrich
        No. 2  G. W. Hunt
"  .  .  .
"Filed June 12, 1901"

A birth certificate also shows decedent's father was born in Illinois.

The similarities which tend to establish the identity as the same person are the name and ages; the original family home was in Shelbyville, Illinois; the father of each had the first name of Joseph, and the last part of the mother's maiden name was J. Reed and Jane Reed. Further, both Hoopers (if they were not the same person) were in Seattle, Washington, between 1898 and 1902.

In the case of *In re Ampusait's Estate,* 141 Wash. 74, 250 Pac. 463 (1926), this court, in discussing similarity of names, said:

"   .  .  .   The respondent produced nothing whatever in the way of evidence of identification, save only the name and the letters referred to, and the fact that one of them was written from Nome, Alaska. It is perhaps unusual, but not unknown, for men to abandon one name and assume another. Cases of similarity of names of persons of no known relationship to each other do occur, and the same name in different branches of a family is of so frequent occurrence as to excite no great surprise. *The name is a circumstance to be considered,*  .  .  . " (Italics ours.)

The dissimilarities are: The decedent's father was born in Shelbyville, Illinois in 1861; he had no middle name and his mother's name was Sarah J. Reed; he had not been married prior to 1901; his occupation was that of carpenter and engineer. Whereas, Otto A. B. Hooper's father was born in the state of Arkansas in 1859; his father's middle name was "Folkes"; he had been married twice prior to 1901; his occupation was that of part-time peace officer, restaurant operator, and mule trader; and his mother was known by various names, the most similar one being Sarah Jane Reed.

■■ The similarities would appear to compel the conclusion that the two Hoopers were one and the same person. However, such a conclusion cannot be justified unless the dissimilarities can be reconciled in some way. The only explanation is that they may be charged to mistakes and inaccuracies and the reluctance of a person to state the correct information about his past when applying for a marriage license. True, at such a big moment in one's life, the accuracy of this information to some people may seem relatively unimportant. This is, however, necessarily indulging in speculation and is not, therefore, an answer to the dissimilarities of identity of the individuals in question. Identity is a fact to be proved like any other fact (*In re Ampusait's Estate, supra*), and from an examination of the record, we find there is substantial evidence to support the trial court's conclusion that the appellants failed to sustain the burden of proof.

Appellants next contend that the trial court erred (1) in refusing to allow them to reopen the case for the purpose of introducing testimony to cure a defect in the testimony of Mandy Boydston Chism, which occurred by reason of the action of the trial court; (2) in denying their motion for a new trial. Inasmuch as these contentions concern the same matter, we will discuss them together.

■ The granting or denial of a motion to reopen or for a new trial is within the sound discretion of the trial court, and this court will not intervene unless it is shown that the trial court manifestly abused its discretion. *Fuller v. Ostruske*, 48 Wn. (2d) 802, 296 P. (2d) 996 (1956); *Finley*

*v. Finley*, 47 Wn. (2d) 307, 287 P. (2d) 475 (1955) *in re* motion to reopen. See *Coats v. Lee & Eastes, Inc.*, 51 Wn. (2d) 542, 320 P. (2d) 292 (1958); *Skov v. MacKenzie-Richardson*, 48 Wn. (2d) 710, 296 P. (2d) 521 (1956) *in re* motion for a new trial.

In this case the trial court initially determined that the testimony of Mandy Boydston Chism, offered by the appellants, as to what her mother told her concerning the Hooper family was admissible under the family history or pedigree exception to the hearsay rule. (*Carfa v. Albright*, 39 Wn. (2d) 697, 237 P. (2d) 795, 31 A. L. R. (2d) 983 (1951).) However, some eleven months after the trial, the court concluded that it had erred when it admitted the testimony and, therefore, it would be disregarded. The appellants argue that if the court had sustained the objection to the testimony during the trial, that they would have had an opportunity to cure the defect, but in reliance upon the court's ruling they did not introduce additional evidence on this subject. Therefore, the appellants contend that the trial court abused its discretion in refusing to allow them to reopen for the purpose of introducing their additional evidence. This evidence is before us by way of affidavits submitted to the trial court in support of appellants' motion for a new trial.

In its oral decision of February 1, 1957, the trial court stated:

" . . . Even if you assume that those declarations of Mandy Boydston Chism's mother were put in, *I still don't think that the matter of identity is proved and I would suppose that if that were the key point in the case, that is, with the declaration there would be enough evidence to prove the identity and without them there was not, that the claimants Hoopers would be entitled to a new trial.* . . . I don't know whether they would or not. . . . I think that would be another question, but *I just can't feel that that would make any difference.* . . ." (Italics ours.)

We have given the appellants the benefit of the testimony of Mandy Boydston Chism as it appears in the record and have considered their affidavits of newly discov-

ered evidence submitted in support of their motion for a new trial, but notwithstanding such evidence, we are convinced, as was the trial court, that the appellants failed to sustain the burden of proving that they were the rightful heirs of the decedent. It follows from this determination, that the trial court did not manifestly abuse its discretion when it denied the appellants' motion to reopen or their motion for a new trial.

Appellants next assign as error the vacation by the trial court of the first findings of fact and conclusions of law entered.

■ A trial court in this state has the power, prior to entry of final judgment, to correct errors in interlocutory orders and proceedings, including erroneous findings of fact and conclusions of law. *Calhoun v. Gilliland,* 2 Wash. Terr. 174, 2 Pac. 355 (1883); *Powelson v. Seattle,* 87 Wash. 617, 152 Pac. 329 (1915).

■ In the case at bar, no final judgment had been entered when the trial court vacated its erroneous findings, and under the above authorities it had the power at such time to vacate the same.

Appellants' assignment in respect to the trial court's ruling on the ancestral property included in the decedent's estate is not before this court for review, in view of the failure of the appellants to establish relationship of kin with the decedent.

The judgment is affirmed.

HILL, C. J., MALLERY, FINLEY, and OTT, JJ., concur.