[No. 6869-9-II.   Division Two.   April 18, 1985.]

*In the Matter of the Estate of*
JULIA E. COOK.

---

*Scott Easter,* for appellants.

*Robert P. Love,* for respondents.

WORSWICK, C.J.—Julia E. Cook died on January 13, 1980, domiciled in Washington and leaving a Washington estate. She left no spouse or descendants. This litigation is a contest between maternal and paternal heirs. The issues at trial centered on Cook's paternity. The trial court found that Wilbur Cumpston was her father. It settled her estate in Cumpston's heirs. The maternal heirs appeal. The dispositive issue is whether the finding of paternity is correct.[1] We affirm.

Cook was born illegitimate in Ohio in 1909. No birth certificate was issued at that time. Her mother married Wilbur

---

[1]The parties agree that paternity is the controlling factual issue. Cumpston's heirs claim through his daughter, Julia's half sister, who died after Cook. The maternal heirs claim through a relationship of lesser affinity deriving from Cook's mother. Their claim must fail if Cumpston is established as Cook's father. *See* RCW 11.04.015(2)(c), (d); RCW 11.04.035.

Cumpston in 1911. They were divorced in 1914. The decree gave child custody to the mother. Cumpston died in 1920. In 1942, Cook obtained an Ohio birth certificate (delayed registration) supported by affidavits of her mother and an aunt (both now deceased), which identified Cumpston as her father. This certificate is probably the single most important item of evidence supporting the paternity finding.[2]

An important threshold question is whether Ohio or Washington law controls the determination of paternity. Appellants urge the application of Ohio law because it imposes more stringent proof requirements.[3] We elect to apply Washington law, the salient features of which are that (1) illegitimacy does not affect inheritance by, from, or through any person (RCW 11.04.081), and (2) paternity is a fact to be proved as any other fact, *i.e.,* by a preponderance of the evidence. *See In re Estate of Hooper,* 53 Wn.2d 262, 332 P.2d 1077 (1958); *In re Estate of Pesonen,* 147 Wash. 378, 266 P. 165 (1928); *In re Estate of Ampusait,* 141 Wash. 74, 250 P. 463 (1926). *See also* Restatement (Second) of Conflict of Laws § 135.(1971).

Generally speaking, paternity is a status issue. The traditional rule is that determinations of personal status are governed by the local law under which the status was created, *e.g.,* where a marriage was celebrated or a person born. Restatement (Second) of Conflict of Laws §§ 283, 287 (1971). That local law usually, but not always, has the most

---

[2]The case was tried on documentary evidence only, of which there was an abundance.

[3]Ohio has required a clear and unequivocal acknowledgment by the father to establish paternity, an impossibility in this case. *See Eichorn v. Zedaker,* 109 Ohio St. 609, 144 N.E. 258 (1922); *Snyder v. McClelland,* 83 Ohio App. 377, 81 N.E.2d 383 (1948). The constitutionality of this has been questioned, but Ohio apparently still requires the proof to be "clear and convincing." *See In re Martin,* 51 Ohio App. 2d 21, 365 N.E.2d 892 (1977).

The trial court appeared to apply Ohio law, although this is not entirely clear from the record. However, we are not bound by this as we can affirm on a basis other than that used by the trial court. *Gross v. Lynnwood,* 90 Wn.2d 395, 583 P.2d 1197, 96 A.L.R.3d 187 (1978).

significant relationship to the parties and events involved in creating the status. The forum state may, however, have an overriding interest in applying its own law.

In this regard, the distinction between determination of status and the incidents of status is instructive.

> In law, a status can be viewed from two standpoints. It can be viewed as a relationship which continues as the parties move from state to state, or it can be viewed from the standpoint of the incidents that arise from it. . . .
>
> On occasion, the courts are faced with a question of pure status, namely whether, as a general proposition, there is a marital, or a legitimate, or an adoptive relationship between the parties. . . . It is clear, however, that questions involving the incidents of a status arise more frequently than do questions which purely involve the status as such. One problem is whether a question involving the incidents of a status can properly be decided without having made a preliminary determination of whether the status does, or does not, exist. . . .
>
> A person's status remains the same during his travels from state to state. So persons who have been validly married will be regarded as husband and wife as they move from state to state. On the other hand, the incidents that arise from a status are likely to vary since they depend upon the law governing the particular incident.
> . . .

Restatement (Second) of Conflict of Laws, ch. 11, Status, Introductory Note at 231–32 (1971).

While paternity is an essential factual question here, the overriding problem confronting the Washington courts involves the need to resolve conflicting claims to a Washington estate left by a deceased Washington resident. When the issue is thus focused, it becomes clear that Washington, not Ohio, has the dominant interest in solving the problem. In short, it is the incidents of paternity that primarily engage us; the status is of secondary concern. Thus we conclude that Washington law should apply. *See In re Estate of Shippy*, 37 Wn. App. 164, 678 P.2d 848 (1984).[4]

---

[4]Our conclusion is fortified by the fact that, unlike the more common paternity case (*e.g.*, *Carfa v. Albright*, 39 Wn.2d 697, 237 P.2d 795, 31 A.L.R.2d 983

There remains only the question whether a preponderance of the evidence supports the disputed finding. We hold that it does.[5]

A multitude of documents constituted the evidence considered by the trial court. As might be expected, the parties correspondingly have marshaled many arguments based on the evidence by which they hope to persuade us. We will limit our discussion to two documents and the arguments related to them.

The paternal heirs' claim rests chiefly on the delayed birth registration certificate. The maternal heirs argue that the recitation of paternity in the certificate is inadmissible because it was not necessary under Ohio law. We disagree for several reasons.

Whether required or not, the information was taken and recorded in a presumptively valid manner under Ohio law in force at the time. *See* Ohio Rev. Code Ann. § 3705.20 (Page 1980) and former General Code § 1261–57. Under Washington law, a certified copy of a delayed registration certificate is prima facie evidence of the facts stated therein. RCW 70.58.130. In this connection, it is interesting to note that the evidence taken in this situation by Ohio authorities comported exactly with Washington requirements for the recording of paternity in such a certificate. *See* RCW 70.58.120.

Moreover, the certificate was admissible on three independent additional grounds: first, as a duly made record of

(1951)), a determination of Cook's paternity will be of no detriment to Cumpston or his heirs. In fact, such a determination would advance the beneficial purpose of effectuating Cook's intent as to heirship, for it was at Cook's instance that the birth certificate identifying Cumpston as her father was issued. Intent of a decedent is always the paramount consideration in resolving heirship questions. *See In re Estate of Bergau,* 103 Wn.2d 431, 693 P.2d 703 (1985).

[5]Because the evidence was all documentary, appellants urge that we review it de novo. This we may, but are not compelled, to do. *Faucher v. Burlington Northern, Inc.,* 24 Wn. App. 711, 603 P.2d 844 (1979). It makes no difference whether we do or not. The trial court made a careful and reasoned analysis and we see no reason to disagree with its conclusions.

vital statistics under ER 803(a)(9), irrespective of statutory requirements; second, as reputation evidence of relationship, including paternity, under ER 803(a)(19); and third, as a properly authenticated ancient document under ER 803(a)(16). The certificate was admissible and would, alone, support the challenged finding.

The principal evidence opposing the paternity conclusion was the affidavit of Bessie Mae Eidenour Stewart, Cook's maternal aunt. Mrs. Stewart, a maternal heir, was born in 1900. She stated her belief that Cook's mother did not meet Cumpston until after Cook's birth in 1909, and stated that the mother had never told her, or anyone else to her knowledge, who Cook's father was. The trial court considered but was not persuaded by this affidavit. We agree with the trial court's conclusion. Expression of a belief does not establish a verity, and silence on the subject of a child's paternity proves nothing.

We need not prolong this opinion by a further discussion of the evidence. It should suffice to note that, while hardly overwhelming, it was sufficient to support the disputed finding.

Affirmed.

REED and ALEXANDER, JJ., concur.