[No. 20060-7-I.   Division One.   June 13, 1988.]

THE BANK OF NOVA SCOTIA, *Appellant,* v. TSCHABOLD EQUIPMENT LTD., ET AL, *Defendants,* PACIFIC WESTERN EQUIPMENT COMPANY INC., *Respondent.*

*David D. Cullen, Robert D. Greene,* and *Cullen & Hvalsoe,* for appellant.

*James M. Kristof,* for respondent.

WINSOR, J.—The Bank of Nova Scotia (ScotiaBank), a Canadian institution, appeals from King County Superior Court orders denying recognition of a Canadian default judgment entered against Pacific Western Equipment Co., a Washington corporation. We reverse the orders, holding that the Uniform Foreign Money–Judgments Recognition Act (the Foreign Money–Judgments Act), RCW 6.40, requires recognition of the Canadian judgment.

On April 18, 1984, Tschabold Equipment Ltd. (Tschabold), a Canadian corporation, drafted a $68,000 check

made payable to Pacific Western. The check was drawn on Tschabold's account at the Mayfield, Alberta, branch of ScotiaBank. Pacific Western deposited the check in its Seattle checking account. On April 27, 1984, Tschabold issued a stop payment order on the check. For reasons not revealed in the record, Pacific Western's bank did not receive the check marked "stop payment" until June 15, 1984. Apparently as a result of the delay, Pacific Western's bank refused to honor the stop payment order.

ScotiaBank filed an action in the Court of Queen's Bench of Alberta, Judicial District of Edmonton (the Canadian court), naming Tschabold and Pacific Western as defendants. On the basis of ScotiaBank's counsel's sworn statement that "this action is founded on a contract executed in the Province of Alberta", and Alberta Court Rule 30(f)(i),[1] the Canadian court entered an order allowing ScotiaBank to serve Pacific Western in Seattle, Washington.

The relevant portion of ScotiaBank's statement of claim provided:

> 8. On or about April 18, 1984, the Defendant, Tschabold Equipment, issued a cheque payable to Pacific Western for the sum of $68,000.00 American dollars, drawn upon the Mayfield Inn Branch of the Plaintiff.

> 9. On or around April 27, 1984, the Defendant, Leo Edward Tschabold, executed a stop payment order on the said cheque.

> . . .

> 11. The Plaintiff states that the said cheque as endorsed by the Defendant, Pacific Western, was presented for payment at the said Mayfield Inn Branch at which time the Plaintiff refused payment and returned the cheque to the bank originally cashing it for Pacific Western.

> 12. It was subsequently determined that the said bank which cashed the cheque refused the stop payment and

---

[1]Alberta Court Rule 30(f)(i) allows service outside Alberta whenever:

"(f) the proceeding is to enforce, rescind, resolve, annul or otherwise affect a contract or to recover damages or obtain any other relief in respect of the breach of a contract, being (in any case) a contract

"(i) made within Alberta[.]"

accordingly, the Plaintiff was obligated to pay the cashing bank the sum of $68,000.00 American dollars at which time the Plaintiff became a holder in due course for valuable consideration of the said cheque.

13. As a further result of the above mentioned transaction, the Plaintiff suffered damages in the sum of $68,000.00 American dollars which the Plaintiff has charged against the said chequing account of the Defendant, Tschabold Equipment.

Tschabold's account apparently contained insufficient funds to cover the $68,000 charge.

Pacific Western retained Canadian counsel (Bishop) to determine "why and how Pacific Western could be included in this lawsuit." In June 1985, Bishop moved to strike the statement of claim against Pacific Western for failure to disclose a cause of action. A hearing on the motion was had and Pacific Western's motion was denied.

At the hearing, ScotiaBank's attorney told the Canadian court that the $68,000 may not have been due Pacific Western and that therefore Pacific Western may have been unjustly enriched. Tschabold is in fact indebted to Pacific Western for that amount.[2] It is unknown whether the Canadian court considered the statement in ruling against Pacific Western.[3]

On ScotiaBank's motion, the Canadian court entered an order in July 1985, requiring Pacific Western to produce an officer for discovery purposes on August 27 and 28, 1985.

---

[2]ScotiaBank's attorney may have believed his statement to be true at the time of the hearing. At his deposition, Tschabold testified that the amount was not due. Although Bishop attended Tschabold's deposition, he did not question Tschabold on this issue.

[3]If the statement was offered as evidence, it should not have been considered. Rule 129 of the Alberta Rules of Court, as quoted in ScotiaBank's brief at pages 22–23 provides that:

"(1) The court may at any stage of the proceedings order to be struck out or amended any pleading in the action, on the ground that

"(a) it discloses no cause of action or defense, as the case may be, . . .

". . .

"(2) No evidence shall be admissible on an application under clause (a) of subrule (1)."

Pacific Western did not comply with the order, but did send the Canadian court a letter stating that there were no grounds of action against it, that the check was payment on a loan, and asking for clarification of the charges. The Canadian court received this letter on September 5, 1985, and marked it Pacific Western's "Statement of Defence."

In June 1986, ScotiaBank moved for an order holding Pacific Western in contempt, striking Pacific Western's statement of defense, allowing it to proceed to judgment against Pacific Western, and declaring Pacific Western to have submitted to the Canadian court's jurisdiction. Pacific Western did not contest the motion but did write again to the court stating that ScotiaBank had no legitimate claim against it. Pacific Western claims that at this time it entered into an agreement with Tschabold that Tschabold "would take care of" the Canadian case. There is no evidence in the record that either the Canadian court or ScotiaBank was advised of this agreement. The Canadian court entered the order sought by ScotiaBank, and on July 28, 1986, entered a default judgment against Pacific Western for the full amount of the check, with interest, costs, and attorneys' fees.

ScotiaBank filed the Canadian judgment in the Superior Court for King County. Pacific Western moved for nonrecognition pursuant to the Foreign Money–Judgments Act, arguing that the judgment was obtained by fraud, the Canadian proceeding was contrary to an agreement between the parties to resolve the matter outside of that court, and that the Canadian court was a seriously inconvenient forum.

The trial court granted Pacific Western's motion for nonrecognition. In it's oral ruling, the trial judge stated that the Canadian court's judgment appeared to be based on one or more fraudulent statements. The court added that Washington courts abhor defaults. ScotiaBank moved for reconsideration. In response, Pacific Western raised additional grounds for refusing recognition: that because judgment was entered without Pacific Western having been

informed of the claim against it, the underlying claim was repugnant to this state's public policy and violated Pacific Western's due process rights. ScotiaBank's motion for reconsideration was denied. ScotiaBank appeals the trial court's order denying reconsideration and its order of non-recognition.

Whether a judgment entered by a foreign nation will be recognized and enforced in Washington is determined by application of the Foreign Money–Judgments Act, RCW 6.40, an act not previously interpreted by the courts of this state. The Foreign Money–Judgments Act, which has been adopted in 16 states, applies to "any foreign judgment that is final and conclusive and enforceable where rendered", RCW 6.40.020, and provides that such judgments are "enforceable in the same manner as the judgment of a sister state which is entitled to full faith and credit", RCW 6.40-.030. RCW 6.40.040 identifies grounds for refusing to recognize a foreign judgment:

(1) A foreign judgment is not conclusive if

(a) the judgment was rendered under a system which does not provide impartial tribunals or procedures compatible with the requirements of due process of law;

(b) the foreign court did not have personal jurisdiction over the defendant; or

(c) the foreign court did not have jurisdiction over the subject matter.

(2) A foreign judgment need not be recognized if

(a) the defendant in the proceedings in the foreign court did not receive notice of the proceedings in sufficient time to enable him to defend;

(b) the judgment was obtained by fraud;

(c) the claim for relief on which the judgment is based is repugnant to the public policy of this state;

(d) the judgment conflicts with another final and conclusive judgment;

(e) the proceeding in the foreign court was contrary to an agreement between the parties under which the dispute in question was to be settled otherwise than by proceedings in that court; or

(f) in the case of jurisdiction based only on personal service, the foreign court was a seriously inconvenient forum for the trial of the action.

RCW 6.40.040. Recognition cannot be refused for lack of personal jurisdiction, however, if the defendant made a voluntary general appearance in the proceedings. RCW 6.40-.050(1)(b).

On appeal, this court may fully review all the evidence presented to the trial court, as the determination of whether statutory language applies to a factual situation is a conclusion of law, *In re Meistrell,* 47 Wn. App. 100, 107, 733 P.2d 1004 (1987), and all evidence is documentary, *In re Estate of Cook,* 40 Wn. App. 326, 330 n.5, 698 P.2d 1076 (1985).

### FRAUD

ScotiaBank first assigns error to the trial court's conclusion that the Canadian judgment was obtained by fraud within the meaning of RCW 6.40.040(2)(b), and the court's resultant refusal of recognition. Two instances of fraud were argued to the trial court: (1) ScotiaBank's sworn jurisdictional statement that "this action is founded on a contract executed in the Province of Alberta"; and (2) ScotiaBank's statement at the hearing on Pacific Western's motion to strike that Tschabold may not owe Pacific Western $68,000. On appeal, Pacific Western has abandoned the first of these statements as a basis for nonrecognition, conceding that it waived any objection to recognition based on fraud in obtaining jurisdiction by its voluntarily general appearance in the Canadian action. We therefore address only the second contention.

A review of cases decided under the Foreign Money-Judgments Act indicates that in determining whether to recognize a foreign judgment, courts differentiate between types of fraud purportedly employed in obtaining the judgment. The basis for differentiation was succinctly stated as "[t]he fraud must relate to matters other than issues that could have been litigated and must be a fraud on the court"

in *Fairchild, Arabatzis & Smith, Inc. v. Prometco (Produce & Metals) Co.,* 470 F. Supp. 610, 615 (S.D.N.Y. 1979) (quoting *Overmyer v. Eliot Realty,* 83 Misc. 2d 694, 371 N.Y.S.2d 246, 258 (1975)). *Accord, Norkan Lodge Co. v. Gillum,* 587 F. Supp. 1457 (N.D. Tex. 1984) (the fraud alleged as a basis for nonrecognition involved not fraud issues but rather credibility questions and simple fact issues legitimately resolved by the Canadian court); *Porisini v. Petricca,* 90 A.D.2d 949, 456 N.Y.S.2d 888 (1982) (allegation of fraud that attempts to challenge merits is an issue foreclosed to the recognition court).

Under RCW 6.40.900 we are required to construe the Foreign Money–Judgments Act so "as to effectuate its general purpose to make uniform the law of those states which enact it." We therefore adopt the rule set out above and hold that fraud involving the merits of a case or issues that were, or could have been, litigated, is not a basis under the Foreign Money–Judgments Act for denying recognition of a foreign judgment.

■ Application of this rule is unnecessary here, however, as we do not find any evidence in the record that ScotiaBank's 1985 statement to the court was fraudulent. ScotiaBank's statement that Tschabold may not have owed Pacific Western $68,000 was derived from the deposition testimony of Tschabold and from inferences drawn from Tschabold's issuance of a stop payment order. There is no evidence ScotiaBank deliberately made a false statement to the court.[4] Absent some evidence of fraudulent intent, a finding of fraud within the meaning of RCW 6.40.040(2)(b) is unwarranted:

---

[4]Indeed, the statement may have been true when made. By letter dated November 27, 1986, Tschabold finally conceded indebtedness to Pacific Western, stating:

"Upon receiving verbal confirmation from Estabrook Construction Ltd. . . . that they would not be holding me liable for any indebtedness to them in regards to their sale of one (1) Caterpillar D7G Crawler tractor to Pacific Western Equipment Inc. of Seattle. I acknowledge indebtedness of Sixty Eight Thousand U.S. dollars to Pacific Western Equipment. . . ."

> A representation of fact believed to be true but which proves to be false is actionable, and our law as of right ought to and does afford a remedy for the damage sustained by the representee [negligent misrepresentation], but it is a *non sequitur* to say that such a representation is fraudulent.

*Brown v. Underwriters at Lloyd's*, 53 Wn.2d 142, 146, 332 P.2d 228 (1958). RCW 6.40.040(2)(b) provides for nonrecognition of a judgment obtained by fraud; not for nonrecognition of a judgment obtained by a negligent misrepresentation. The statement at issue thus was not fraud for purposes of RCW 6.40.040(2)(b).

■ The presence of fraud in obtaining the Canadian judgment was the only basis for nonrecognition given by the trial court, although other bases were argued. The parties have briefed these arguments on appeal. As this court may affirm the trial court on any grounds established by the pleadings and supported by the record, *Noel v. King Cy.*, 48 Wn. App. 227, 232, 738 P.2d 692 (1987), those arguments are addressed here.

SERIOUSLY INCONVENIENT FORUM

RCW 6.40.040(2)(f) permits nonrecognition of a foreign judgment when the foreign court's jurisdiction was based only on personal service and that court was a seriously inconvenient forum. Pacific Western contends that since it was brought into the Canadian action by personal service, this section of the act is an alternative basis for affirming the trial court. ScotiaBank contends that because Pacific Western voluntarily appeared in the Canadian action, the court's jurisdiction was not based only on personal service.

■ Both parties misconstrue section (2)(f) and confuse personal jurisdiction with personal service. Jurisdiction based only on personal service impliedly excludes any acquisition of jurisdiction other than service on a defendant while he or she is within the foreign country. Any other means of acquiring jurisdiction requires not only personal service, but also that the defendant have sufficient contacts with the foreign state to invoke that forum's long–arm

statute, or that the defendant hold or claim title to property in the foreign state. *See generally Colonial Bank v. Worms,* 550 F. Supp. 55 (S.D.N.Y. 1982) (section inapplicable where jurisdiction based on defendant's prior consent, voluntary appearance and numerous contacts with forum); *Southern Bell Tel. & Tel. Co. v. Woodstock, Inc.,* 34 Ill. App. 3d 86, 339 N.E.2d 423 (1975) (section inapplicable where jurisdiction was based not only on personal service, but on the transaction of business in the foreign state).

The Canadian court's jurisdiction over Pacific Western was based upon its long–arm rule, a court order, and Pacific Western's voluntary appearance, as well as upon personal service. Refusing recognition of ScotiaBank's Canadian judgment is therefore not warranted on this basis.

## AGREEMENT BETWEEN PARTIES

Pacific Western also argues that because of its agreement with Tschabold that Tschabold "would take care of" the Canadian case for Pacific Western, RCW 6.40-.040(2)(e) bars recognition of the Canadian judgment. RCW 6.40.040(2)(e) allows a court to refuse recognition when the foreign proceeding was contrary to an agreement between the parties to settle the dispute outside of that court. We have not located any cases that address this section of the Foreign Money–Judgments Act. ScotiaBank argues that section (2)(e) applies only to agreements between adverse parties and does not apply to agreements between codefendants. We agree.

## PUBLIC POLICY AND DUE PROCESS

Pacific Western last argues that due process principles and the public policy of Washington state, which require a defendant to be informed of the claim against him, warrant nonrecognition of ScotiaBank's judgment. *See* RCW 6.40-.040(2)(c). ScotiaBank contends that Pacific Western had notice of the claims against it by the complaint and by Tschabold's deposition testimony. It also argues that the sufficiency of its claim has already been litigated.

■ Pacific Western's argument on this issue is in essence an attempt to reopen questions decided by the Canadian court at the hearing on Pacific Western's motion to strike. At that hearing, the court concluded ScotiaBank had stated a claim against Pacific Western. When a party is given the opportunity to litigate issues in a foreign forum, he or she is precluded from collaterally attacking the resulting judgment in the recognition state. *Idaho Dep't of Health & Welfare v. Holjeson,* 42 Wn. App. 69, 73–74, 708 P.2d 661 (1985), *review denied,* 105 Wn.2d 1005 (1986). Although *Holjeson* addressed enforcement of the judgment of a sister state, the same rule applies in determining whether the judgment of a foreign nation should be recognized. *E.g., Ingersoll Milling Mach. Co. v. Granger,* 833 F.2d 680 (7th Cir. 1987) (doctrine of res judicata prevents recognition court from relitigating issues already decided in foreign court); *Porisini v. Petricca, supra* (allegations that attempt to challenge the merits of the action are issues foreclosed to the recognition court). We therefore hold that these bases do not preclude recognition of the Canadian judgment.

## Attorneys' Fees

ScotiaBank has asked for an award of attorneys' fees incurred in this appeal if it is the substantially prevailing party. It contends such an award is warranted simply because the Canadian court awarded it attorneys' fees incurred in obtaining the default judgment. Although ScotiaBank is the prevailing party on appeal, we do not grant the requested award.

As a general rule, "attorney fees are not ordinarily recoverable except pursuant to statute or under a contractual obligation." *Iverson v. Marine Bancorporation,* 86 Wn.2d 562, 564, 546 P.2d 454 (1976); RAP 18.1. ScotiaBank has cited no contractual or statutory provision authorizing an award of fees on appeal. Although CR 55(b) does allow an award of attorneys' fees and costs to be included on a default judgment, it is not the default judgment that has

been appealed to this court. Rather, ScotiaBank appeals from an order entered pursuant to RCW 6.40, the Uniform Foreign Money–Judgments Recognition Act. That act makes no provision for attorneys' fees.

We reverse the trial court's orders refusing recognition of the Canadian judgment.

COLEMAN, A.C.J., and SWANSON, J., concur.