**INGERSOLL MILLING MACHINE CO., an Illinois corporation, Plaintiff,**

**v.**

**John P. GRANGER, Defendant.**

**No. 79 C 20076.**

United States District Court, N.D. Illinois, W.D.

March 24, 1986.

Bruce H. Weitzman, McDermott, Will & Emery, Chicago, Ill., John C. McCarthy, Williams, McCarthy, Kinley, Rudy & Picha, Rockford, Ill., for plaintiff.

Gerald G. Saltarelli, Butler, Rubin, Newcomer & Saltarelli, Chicago, Ill., for defendant.

## ORDER

ROSZKOWSKI, District Judge.

Before the court are various motions by the parties. For the reasons stated herein,

judgment is entered on behalf of defendant on his counterclaim and against plaintiff on the complaint. Plaintiff is given until April 11, 1986, to file a response to defendant's damage arguments. Defendant is given until April 25 to file his reply.

## I. BACKGROUND

Much of the factual background in this case is well set out in the Magistrate's May 27, 1980, Report and Recommendation and need not be repeated here; a brief summary will suffice for purposes of the instant motions.

This case is an employment dispute between plaintiff Ingersoll Milling Machine Company ("Ingersoll") and its exemployee, defendant John P. Granger. Granger was originally stationed at Ingersoll's international headquarters in Rockford, Illinois and was transferred in the fall of 1971 to its Brussels, Belgium office. Ingersoll terminated its relationship with Granger in 1977 while Granger was still in Belgium.

In April of 1978, Granger brought suit against Ingersoll and its Belgium subsidiary in the Belgium courts. Granger alleged that he was entitled to certain termination compensation and other benefits under Belgian law. Ingersoll counterclaimed in the Belgium action for certain expenses it had advanced Granger.

Over one year later, on August 2, 1979, Ingersoll filed this action. Count I sought a declaratory judgment that Granger was not entitled to any termination benefits. Count II sought recovery of certain expenses Ingersoll had advanced Granger during the course of his employment.[1] Thus, the substance of Ingersoll's Illinois suit mirrored that of Granger's Belgian suit.

Granger counterclaimed in this action for enforcement of any judgment rendered by the Belgium court.

---

1. Count III sought to enjoin Granger from proceeding with the Belgium action. This count was dismissed on January 31, 1980. As to Count IV that Ingersoll sought to add in October of 1983, nothing indicates that Ingersoll could not have received the sought set-offs from the Belgium courts. The Belgian courts in fact granted Ingersoll's claim for numerous set offs against Granger. Ingersoll's motion to further amend its complaint at this late date is therefore denied.

As to the procedural background following initiation of this action, Granger first filed a motion to dismiss which was for the most part denied. Ingersoll then filed various discovery motions up until Granger received a favorable ruling in Belgium on March 20, 1980. On April 15, Granger once again sought dismissal of Ingersoll's case based on the Belgium lawsuit. This motion to dismiss was extensively briefed and resulted in a Report and Recommendation from Magistrate Mahoney in which he recommended that the motion be granted. The parties then submitted further briefs as to why the Report and Recommendation should or should not be adopted by this court.

On July 2, 1980, rather than ruling on the Report and Recommendation, this court entered a stay order pending appellate review of the Belgium judgment. The Belgium intermediate appellate court issued a ruling essentially upholding the award to Granger and the set off for expenses to Ingersoll. Granger then filed a further motion to dismiss or for summary judgment in this action along with a counter claim for enforcement of the Belgian judgment. Ingersoll opposed this motion, filed its own motion to dismiss the counterclaim, and sought leave to add a further count to its complaint. The additional count would require Granger to reimburse Ingersoll for certain benefits and special payments. Pending a ruling on these motions, Granger held off on certain discovery. This delay also resulted in various discovery motions. On February 21, 1984, this court stayed consideration of all motions pending a decision by the Belgium Supreme Court.

On June 3, 1985, the Belgian Supreme Court (the "Cour de Cassation") issued a ruling affirming the decision of the intermediate appellate court. By order of this court, the parties filed simultaneous memoranda as to the issues remaining in this case. Ingersoll asked this court to vacate the stay, resolve any discovery disputes, and set the case for trial. Granger filed a motion for enforcement of the Belgian judgment as *res judicata* of the issues in this case and for dismissal of Ingersoll's claims.

## III. DISCUSSION

■ While the issue is open in this circuit, the weight of authority suggests that a federal district court sitting in a diversity case should apply state law in determining the conclusive effect of a foreign court judgment. *See* Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction § 4473; Annot., 13 A.L.R.Fed. 208, 216–17. Based on the arguments presented to this court, it is clear that the parties accept the majority position. Thus, this court sees no reason for exhaustive debate of the issue; Illinois law will be used.

Illinois Uniform Foreign Money-Judgments Act, Ill.Rev.Stat. ch. 110, ¶ 12–618, *et seq.* (the "Uniform Act"), provides the framework for determining whether the Belgian judgment should be recognized in this case. Under the Uniform Act, any foreign judgment that is "final and conclusive and enforceable where rendered" will be "conclusive between the parties to the extent that it grants or denies recovery of a sum of money." *Id.* at §§ 12–619, 12–620. The foreign judgment will not be deemed "conclusive" if: (1) the foreign court did not use "procedures compatible with the requirements of due process of law"; or, (2) the foreign court lacked either personal or subject matter jurisdiction. *Id.* at ¶ 12–621(a).

### A. The Belgian Judgment is "Conclusive"

There is no real dispute in this case concerning jurisdiction. Ingersoll's claims that the vast majority of witnesses and documents relevant to this action are located in Illinois will not serve to remove the Belgium court's properly vested jurisdiction: Ingersoll has a Belgium subsidiary and voluntarily appeared in the Belgium action arguing strongly (all the way to the Belgium Supreme Court) that American rather than Belgian law governed the relationship between the parties. The fact that

the Belgium courts ultimately disagreed and applied Belgian law goes only to the merits of the case and has no effect on the Belgian courts' jurisdiction to make such a finding.

Ingersoll argues that, contrary to Granger's assertions that this action is merely an attempted "retrial", it in essence never had a trial:

> The Belgian Labor court proceeding was an attempt by Granger to utilize a court of limited jurisdiction, with extremely restricted procedures for presenting evidence, which was likely to heavily favor the application of the only body of law with which it was familiar, despite the great inconvenience to [Ingersoll], solely so that Granger could obtain a more favorable result than he knew he was entitled to receive under Illinois law.

Ingersoll's Reply Memorandum in Support of Its Motion to Dismiss Granger's Counterclaim at 6–7. Ingersoll also intimates that it did not receive a "full and fair opportunity to present its claims" in Belgium and that the Belgium court denied it the right of "cross examination". *Id* at 7. All of this appears to be an attempt by Ingersoll to show that it was not afforded due process in the Belgian action.

■ In response, Granger submits the affidavit of Edward Haywood, an experienced attorney familiar with the process afforded litigants in the courts of Belgium. Mr. Haywood points out that the Belgian Judicial Code granted Ingersoll the right to call witnesses as well as the right to take testimony outside of Belgim through letters rogatory. Ingersoll does not dispute the accuracy of Mr. Haywood's statements. Ingersoll never petitioned the Belgian court to hear live testimony and it never requested issuance of letters rogatory to take testimony outside of Belgium. Granger also points out that, like Ingersoll, he chose to call no witnesses. Thus, given that there were no witnesses, due at least in part to Ingersoll's own tactical decision, Ingersoll cannot point to the lack of cross-examination as a violation of due process.

■ Also, contrary to Ingersoll's speculation about the Belgian courts' predisposition to apply Belgian law, this court has been shown nothing to indicate that the Belgian court system provided Ingersoll with anything less than a full and fair opportunity to present its claims. Had this court acted first and applied Illinois law, Granger could hardly have advanced a similar due process claim to the Belgian courts. A forum court's decision that the forum's substantive law should govern a given dispute should not alone serve to negate the apparent fairness of the forum's court system. This court is unwilling to hold that Ingersoll was denied due process based solely on its unfounded speculation concerning "bias" of the Belgian courts.

In short, since the Belgian courts had jurisdiction over the dispute and afforded procedural fairness to the litigants, the Belgian judgment is "conclusive" under the Uniform Act.

**B. The Other Conditions for Foreign Judgment Recognition Are Satisfied.**

Even if a foreign judgment is "conclusive", it need not be recognized if any one of six other conditions is met:

(1) the foreign court defendant received insufficient notice to defend;

(2) the judgment was obtained by fraud;

(3) the cause of action underlying the judgment is repugnant to Illinois law;

(4) the foreign judgment conflicts with another final and conclusive judgment;

(5) the proceeding in the foreign court was contrary to an agreement between the parties under which the dispute in question was to be settled other than by proceedings in the foreign court; or,

(6) in cases where jurisdiction is based only on personal service, the foreign court was "a seriously inconvenient forum."

Ill.Rev.Stat. ch. 110, ¶ 12–621(b). Conditions (1), (2) and (4) are not at issue in this case and need not be discussed. Also, since jurisdiction in the Belgium courts was based on more than personal service, condition (6) is inapplicable.

■ Ingersoll makes a brief argument concerning condition (3) which essentially amounts to a claim that, since the Belgian courts decided against Ingersoll's position and applied Belgian rather than Illinois law, the decision of the Belgian courts is "repugnant to Illinois public policy". The Belgian court decision to apply Belgian law to this employment suit goes to the heart of the merits of Granger's benefits claim. As this court noted in its order declining Ingersoll's request to enjoin Granger's Belgian action, "the facts in the instant case do not so clearly demonstrate that the question to be determined will or should be governed by Illinois law." Memorandum Opinion, January 30, 1980, at 8. Thus, contrary to Ingersoll's repeated assertions, the law applicable to this employment dispute was not so clear as to obviate the need for a judicial determination. The fact that Belgian, rather than American, courts ultimately resolved the issue is in no way "repugnant to Illinois public policy". Indeed, squarely faced with the issue, this court may well have reached the same conclusion as the Belgian courts.

In any case, Ingersoll's argument is merely an improper attempt to relitigate the merits of this case. As was cautioned in the seminal case concerning recognition of foreign money judgments,

> the merits of the case should not, in an action brought in this country upon the judgment, be tried afresh, as on a new trial or appeal, upon the mere assertion of the party that the judgment was erroneous in law or in fact.

*Hilton v. Guyot*, 159 U.S. 113, 202, 16 S.Ct. 139, 158, 40 L.Ed. 95 (1895)

■ Finally, Ingersoll argues that condition (5) is met here since the parties agreed to have their relationship governed by Illinois law. Even assuming that the parties did agree to be governed by Illinois law, there is no indication that they also agreed to be restricted to the Illinois courts. The type of agreement contemplated by condition (5) is an agreement to go before a particular forum or before an arbitrator *not* an agreement to be governed by particular laws. Since no such agreement was made here, condition (5) is not applicable.

A final note concerning the six conditions of Paragraph 12–621(b) is warranted. The three possible irregularities in a foreign judgment recognized by Paragraph 12–621(a)—lack of due process, personal or subject matter jurisdiction—*require* that a foreign judgment not be enforced. If one of the six conditions of Paragraph 12–621(b) is present, however, the foreign money judgment *"need not* be recognized". This language is permissive not mandatory. Given the extended history of this dispute, combined with the fairness afforded the litigants in the Belgium courts, this court would not be inclined to deny enforcement of the judgment even if one of the six conditions of paragraph 12–621(b) were present here.

### C. Reciprocity

Much of the parties' argument in this case concerns whether or not "reciprocity" is required before the Belgium judgment can be enforced. The reciprocity doctrine stems from the seminal *Hilton* case and basically requires that judgments of a foreign country not be recognized as conclusive if American judgments are subject to review by the courts of the foreign country. Ingersoll argues that Belgian courts do not grant full faith and credit to American judgments and that Illinois law requires reciprocity before a foreign money judgment will be enforced. Granger takes the opposite stance as to both points.

■ Contrary to Ingersoll's position, Illinois does not recognize the doctrine of "reciprocity". For example, while Inger-

soll is correct that *Hilton* was cited in *Banco de Vizcaya v. First National Bank of Chicago*, 514 F.Supp. 1280, 1286 (N.D.Ill. 1981), that case did not discuss reciprocity. Similarly, *Clubb v. Clubb*, 402 Ill. 390, 84 N.E.2d 366 (1949), cited by Ingersoll, was decided before Illinois adopted the Uniform Act. None of Ingersoll's case law convincingly supports the notion that Illinois requires reciprocity.

In fact, the Uniform Foreign Money-Judgments Act, after which the Illinois Uniform Act is modeled, rejected the doctrine of reciprocity. *See Tahan v. Hodgson*, 662 F.2d 862, 867 n. 21 (D.C.Cir.1981). Indeed, "[t]he reciprocity doctrine has been widely criticized and seldom invoked". *Id.* (citing numerous authorities). *See also Cunard Steamship Company Ltd. v. Salem Reefer Services AB*, 773 F.2d 452, 460 (2d Cir.1985) ("reciporcity is not an essential element in granting comity. . . ."). *See generally* Wright, Miller & Cooper, Federal Practice & Procedure, Jurisdiction, § 4473; Annot., 13 A.L.R.Fed. 208, 233.[2]

### CONCLUSION

While Ingersoll may have preferred to fight this employment dispute in this court, nothing indicates that it was in any way prevented from full and fair litigation in Belgium. Ingersoll's tactical decisions before the Belgian forum should not stand in the way of terminating this adequately litigated case. Since all prerequisites for recognition of the Belgium judgment have been satisfied, judgment is granted for Granger on his counterclaim and against Ingersoll on its complaint.

The exact amount to be awarded to Granger has not yet been fully briefed. Ingersoll is therefore ordered to respond to arguments raised in Granger's memorandum by April 11, 1986. Granger is given until April 25 to file his reply.

**2.** Even if Illinois did require reciprocity, the limited review of American judgments available in Belgium might still satisfy any reciprocity requirements. *See* Affidavit of Edward Hay-

ward. Like the Illinois Uniform Act, a limited number of defenses are available in Belgium courts. The mere existence of defenses does not rule out reciprocity.