INGERSOLL MILLING MACHINE CO., Plaintiff–Appellant,

v.

John P. GRANGER, Defendant–Appellee.

No. 86–2191.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 11, 1987.

Decided Nov. 16, 1987.

---

Bruce H. Weitzman, McDermott, Will & Emery, Chicago, Ill., for plaintiff-appellant.

Ellen M. Babbitt, Butler, Rubin, Newcomer, Saltarelli & Boyd, Chicago, Ill., for defendant-appellee.

Before WOOD, COFFEY and RIPPLE, Circuit Judges.

RIPPLE, Circuit Judge.

Appellant, Ingersoll Milling Machine Co. (Ingersoll), appeals from a judgment enforcing a money judgment rendered by the Cour de Cassation of Belgium, that country's court of last resort, in favor of appellee, John P. Granger. Ingersoll argues that the Belgian judgment should not have been recognized by the district court. Because we find no merit to Ingersoll's arguments, we affirm the judgment of the district court.

## I

## Background

### A. *Employment Relationship*

In 1963, Mr. Granger began working for Ingersoll at its office in Rockford, Illinois. He resigned on June 23, 1967. However, on February 12, 1968, Ingersoll again hired Mr. Granger in Rockford. From February 12, 1968 until sometime in the autumn of 1971, Mr. Granger worked as a project manager at Ingersoll's Rockford offices.

In 1971, by agreement of the parties, Mr. Granger began working for an Ingersoll subsidiary, Ingersoll Manufacturing Consultants (the Belgian Company or Belgian Subsidiary), in Brussels, Belgium. At the time of his transfer, Mr. Granger negotiated an agreement with Ingersoll governing his transfer. This agreement provided, among other things, for the payment of Mr. Granger's salary, insurance and expenses, and set forth how these matters would be affected by his move from Illinois to Belgium.

In 1975, Mr. Granger became the manager of the Belgian Subsidiary. When Mr. Granger attained this new position, he was placed on the payroll of the Belgian Company. He also was declared by the Belgian Company for tax purposes in Belgium. As of December 31, 1977, Mr. Granger's employment with the Belgian Company was terminated. Mr. Granger subsequently obtained employment with a company in Amsterdam, The Netherlands, although he continued to live in Belgium.

### B. *Litigation*

#### 1. Initiation of the Belgian Action

On April 27, 1978, Mr. Granger brought suit against Ingersoll and the Belgian Company in the Brussels' labor court. The basis of Mr. Granger's action was that, because he had been employed in Belgium from 1971 through 1977, he was entitled, under Belgian law, to certain compensation and termination benefits from both Ingersoll and the Belgian Company.

Both defendants appeared and answered Mr. Granger's complaint. The Belgian Company claimed that Mr. Granger was an employee of Ingersoll only, and that, therefore, he could obtain no relief against the Belgian Company. Ingersoll claimed that, because of the agreement executed by Mr. Granger and Ingersoll prior to Mr. Granger's transfer to Brussels, the employment relationship was governed by Illinois law. Both defendants also brought counterclaims against Mr. Granger for advances that had been made to him while he was employed in Belgium. These claims related to "social security taxes, and educational, travel, salary, and insurance expenses." Appellee's Br. at 4.

#### 2. Initiation of the Illinois Action

In August 1979, Ingersoll brought suit in the Winnebago County (Illinois) Circuit Court against Mr. Granger. Ingersoll sought a declaratory judgment that Mr. Granger was entitled to no further benefits from Ingersoll. Moreover, Ingersoll sought the return of funds advanced to Mr. Granger. Finally, Ingersoll sought to enjoin Mr. Granger from proceeding with the Belgian suit. Mr. Granger removed the Illinois suit to the United States District Court for the Northern District of Illinois. He also sought to dismiss the case on the ground that an action regarding the same dispute was then pending in Belgium and on the ground of *forum non conveniens.* The district court denied Mr. Granger's motion. The district court held that the pendency of the Belgian action did not deprive it

of jurisdiction. Moreover, the court found that many of the factors to be considered in deciding a *forum non conveniens* claim indicated that Illinois might be a more convenient forum than Belgium. Finally, the court granted Mr. Granger's motion to dismiss Count III of Ingersoll's complaint which sought to enjoin the Belgian proceedings.

### 3. Judgment in the Belgian Action

On March 20, 1980, the Belgian trial court found for Mr. Granger on his complaint and for Ingersoll and the Belgian Company on the counterclaims. The award for Mr. Granger on his complaint was against Ingersoll and the Belgian Company jointly. However, the awards on the counterclaims against Mr. Granger were entered separately for Ingersoll and for the Belgian Company. On appeal, the Belgian Labour Court of Appeal affirmed the holding of the trial court. The appellate court, however, relied on a different rationale. It reasoned that, even though the parties originally may have desired to have their relationship governed by Illinois law, the relationship between Ingersoll and the Belgian Company, and Mr. Granger's employment by both entities, also gave Belgium an interest in the employment relationship. Therefore, the court found that Belgian law applied to the employment relationship and that certain laws of "police and security" were applicable to both Ingersoll and the Belgian Company. The court also affirmed the awards on the counterclaims.

In addition to affirming the trial court, the appellate court assessed interest on the two awards. The interest was awarded at the rate of 8 percent through July 31, 1981 and 12 percent thereafter until payment. Appellee's Br. at 7.

The Belgian Cour de Cassation affirmed the appellate court's decision on June 3, 1985. The court held that Ingersoll owed Mr. Granger 3,860,081 BF (Belgian francs) and that Mr. Granger owed Ingersoll 371,-218 BF and the Belgian Company 428,233 BF. These awards also included the interest assessed by the appellate court.

### 4. Recognition of the Belgian Judgment

After the Belgian trial court had rendered its judgment, Mr. Granger filed a second motion to dismiss Ingersoll's suit in the district court. This motion was based on the contention that the action was barred by *res judicata*. Ingersoll opposed Mr. Granger's motion, filed a motion to compel discovery, and sought leave to add another count to its complaint seeking the return of certain funds advanced to Mr. Granger. The court referred the matter to a magistrate. The magistrate recommended dismissal on *res judicata* grounds. The district court, rather than relying on the magistrate's recommendation, stayed further proceedings pending the outcome of the Belgian appellate process.

After the Labour Court of Appeal issued its decision, Mr. Granger filed a counterclaim in the Illinois suit seeking enforcement of the Belgian judgment. Before the district court made any ruling, however, Ingersoll appealed the Belgian decision to the Cour de Cassation.

On March 24, 1986, the district court ruled against Ingersoll on its complaint and granted summary judgment to Mr. Granger on his counterclaim. *Ingersoll Milling Mach. Co. v. Granger*, 631 F.Supp. 314 (N.D.Ill.1986). In so ruling, the court found that the Belgian judgment met the requirements of the Illinois Uniform Foreign Money-Judgments Recognition Act (the Act or the Uniform Act), Ill.Rev.Stat. ch. 110, paras. 12–618 to –626 (1986). Specifically, the court held that the Belgian judgment was "conclusive" under the Uniform Act because the Belgian courts had jurisdiction over the dispute and had used procedures compatible with the requirements of due process of law. *Ingersoll Milling Mach. Co.*, 631 F.Supp. at 316–17. The court also held that recognition of this "conclusive" foreign judgment was proper under the Act because the judgment was not rendered under circumstances making its enforcement repugnant to Illinois public policy and because there was no prior agreement between the parties to settle any disputes between them in a different forum. *Id.* at 318. Moreover, the district

684

court found that the Uniform Act had rejected the requirement of reciprocity. *Id.* Finally, the district court denied Ingersoll's motion to add Count IV to its complaint because, according to the court, Ingersoll could have brought this claim in the Belgian suit but had failed to do so. *Id.* at 315 n. 1.

After further briefing, the district court also issued a judgment that set forth specific amounts for the damage award, including interest. *Ingersoll Milling Mach. Co. v. Granger,* No. 79 C 20076, final judgment (N.D.Ill. July 3, 1986); R. 80. The court held that Mr. Granger was entitled to the full amount of the Belgian judgment plus the interest that automatically accrued under Belgian law on that judgment up to the date that the district court entered its judgment. *Id.* at 2–3. The court adopted the federal "judgment-day" rule for converting foreign currency to American dollars. Under this rule, the court applied the exchange rate on July 3, 1986, the date that the district court's judgment was entered. *Id.* at 3. Thus, the district court awarded Mr. Granger $144,277.85. *Id.* at 4. In making this award, the district court did not permit Ingersoll to take advantage of the set-off awarded by the Belgian judgment to the Belgian Subsidiary. The court only allowed Ingersoll to set-off the amount that it had been awarded under the Belgian judgment. *Id.* at 3–4.

5. Appeal

On appeal, Ingersoll raises four challenges to the district court's March 24, 1986 order: 1) that the court improperly stayed the action in the district court because of the pendency of the Belgian action; 2) that the Belgian judgment was not entitled to recognition under paragraph 12–621(a) of the Uniform Act; 3) that, even if the Belgian judgment were entitled to recognition under subparagraph (a) of paragraph 12–621, the district court should not have recognized the judgment because of the considerations expressed in subparagraph (b) of paragraph 12–621; and 4) that the district court improperly denied Ingersoll's Motion to add Count IV to its complaint. Ingersoll also challenges the district court's final judgment, claiming that: 1) the district court should not have awarded prejudgment interest; 2) the district court applied the wrong exchange rate in converting the award from Belgian francs to American dollars; and 3) Ingersoll should have been permitted to benefit from the set-off awarded to its Belgian Subsidiary by the Belgian judgment.

II

Discussion

A. *Order of March 24, 1986*

1. Stay Order

Relying on *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed. 2d 483 (1976), and *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 16, 103 S.Ct. 927, 937, 74 L.Ed.2d 765 (1983), Ingersoll argues that it was error for the district court to stay the proceedings simply on the basis that a parallel suit was proceeding in the Belgian courts.

In evaluating this argument, it is important, at the outset, to state the procedural posture of the case at the time a stay was granted with somewhat more precision than does Ingersoll. When Mr. Granger initially sought to dismiss or stay the action before the district court, the court denied Mr. Granger's motion because it recognized that it ought to exercise its jurisdiction over the subject matter concurrently with the Belgian courts. *See Laker Airways Ltd. v. Sabena, Belgian World Airlines,* 731 F.2d 909, 926–27 (D.C.Cir.1984) (federal trial court should usually exercise jurisdiction concurrently with foreign trial court); *see also Colorado River,* 424 U.S. at 818, 96 S.Ct. at 1246 (federal court has obligation to exercise concurrent jurisdiction with state court absent exceptional circumstances); *Moses H. Cone Memorial Hosp.,* 460 U.S. at 15–16, 103 S.Ct. at 936–37 (same). It was only after the Belgian trial court had rendered its judgment that the district court decided to stay further proceedings pending the outcome of the Belgian appeal. Therefore, the precise issue

before us is whether it was appropriate for the district court to stay its proceedings at this point in the parallel progression of the litigation in the United States and in Belgium.[1]

In *Colorado River* and *Moses H. Cone Memorial Hosp.*,[2] the Supreme Court enumerated the considerations that a federal district court should consider in determining whether it should exercise jurisdiction concurrently with state courts. In *Moses H. Cone Memorial Hosp.*, 460 U.S. at 15–16, 103 S.Ct. at 936–37, describing its earlier decision in *Colorado River*, the Court summarized those factors as follows:

> We declined to prescribe a hard-and-fast rule for dismissals of this type, but instead described some of the factors relevant to the decision.
>
> > "It has been held, for example, that the court first assuming jurisdiction over property may exercise that jurisdiction to the exclusion of other courts.... In assessing the appropriateness of dismissal in the event of an exercise of concurrent jurisdiction, a federal court may also consider such factors as the inconvenience of the federal forum; the desirability of avoiding piecemeal litigation; and the order in which jurisdiction was obtained by the concurrent forums. No one factor is necessarily determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counselling against that exercise is required. *Only the clearest of justifications will warrant dismissal.*" [*Colorado River*, 424 U.S.] at 818–819 [96 S.Ct. at 1246–1247] (emphasis added; citations omitted).

*Id.* Relying on the foregoing Supreme Court cases, this court recently has addressed the situation of a federal court staying its hand because of a parallel state court proceeding in *Lumen Constr., Inc. v. Brant Constr. Co.*, 780 F.2d 691 (7th Cir. 1985). The situation before us is somewhat different. Here, the alternate forum is not the tribunal of a state of the federal union to which, under our Constitution, we owe a special obligation of comity. Nevertheless, the factors enunciated in those cases, when applied with this difference in mind, can serve as a helpful guide in our evaluation.

When the determination of the district court is reviewed in light of the *Colorado River—Moses H. Cone Memorial Hosp.* factors, it is manifestly clear that the district court did not abuse its discretion in staying proceedings after the rendition of the Belgian trial court's judgment. First of all, there is no particularly strong federal interest in ensuring that this dispute be adjudicated in a federal district court or, indeed, in any American court. This case involves an employment relationship that spanned international boundaries. While the American interest can hardly be termed insubstantial, the Belgian interest also must be recognized as very significant. International judicial comity is an interest not only of Belgium but also of the United States. *See Ronar, Inc. v. Wallace*, 649 F.Supp. 310, 318 (S.D.N.Y.1986). We certainly cannot fault the district court—informed that the Belgian trial court had rendered a verdict which, unless overturned on appeal, would resolve the dispute —for rejecting the "parochial concept that all disputes must be resolved under our laws and in our courts." *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 9, 92 S.Ct. 1907, 1912, 32 L.Ed.2d 513 (1972); *see also Scherk v. Alberto–Culver Co.*, 417 U.S. 506, 519, 94 S.Ct. 2449, 2457, 41 L.Ed. 2d 270 (1974).

Moreover, considerations of judicial economy, especially the need to avoid piecemeal litigation, strongly favored staying the district court proceedings. The Belgian suit, which had begun before the American action was filed, *see Moses H. Cone Memorial Hosp.*, 460 U.S. at 15, 103 S.Ct. at 936, had been brought to a conclusion in the trial court. Absent reversal on appeal, that judgment would adjudicate the rights of

---

**1.** This question is a matter of federal law. *See Faherty v. Fender*, 572 F.Supp. 142, 144 (S.D.N.Y.1983).

**2.** *See also Will v. Calvert Fire Ins.*, 437 U.S. 655, 98 S.Ct. 2552, 57 L.Ed.2d 504 (1978).

the parties. At that point, unless there was a barrier to the recognition of that judgment in the United States, and, as we discuss below, there was little chance of that contingency, there would be no need for further proceedings in the district court. Avoiding such duplication of effort and the possibility of piecemeal litigation is hardly an abuse of discretion. Attention to such "pragmatic concerns," *Ronar*, 649 F.Supp. at 318, is precisely the sort of "careful balancing of factors," *Moses H. Cone Memorial Hosp.*, 460 U.S. at 16, 103 S.Ct. at 937, that must be undertaken in such a situation.

Moreover, it is not insignificant—indeed, it is very significant—that the district court's action in this case was a decidedly measured one. The court did not dismiss the action; it simply stayed further proceedings until the Belgian appeals were concluded. This approach protects the substantial rights of the parties while permitting the district court to manage its time effectively. *See Lumen Constr., Inc.*, 780 F.2d at 698. Such a common sense approach is clearly within the sound discretion of the trial court. *See Landis v. North American Co.*, 299 U.S. 248, 254, 57 S.Ct. 163, 165–66, 81 L.Ed. 153 (1936); *see also Hunt v. Liberty Lobby, Inc.*, 707 F.2d 1493, 1498 (D.C.Cir.1983).

### 2. Application of the Uniform Act

We now turn to Ingersoll's contention that the district court erred in its determination that the Belgian judgment was entitled to recognition and enforcement. As the district court recognized, and as the parties agree, this question must be resolved under Illinois law. *Hunt v. BP Exploration Co. (Libya) Ltd.*, 492 F.Supp. 885, 892 (N.D.Tex.1980). The district court also recognized, and the parties agree, that this issue is governed by the Uniform Act as enacted by Illinois. Ill.Rev.Stat. ch. 110, paras. 12–618 to –626.

#### a.

■ First of all, we believe that there is no serious question as to whether the Belgian judgment meets the basic requirements of the Uniform Act. It is a judgment which "grants or denies recovery of a sum of money." Ill.Rev.Stat. ch. 110, para. 12–620. It was presented to the district court after the completion of all appellate review in Belgium and therefore was "final and conclusive and enforceable where rendered...." Ill.Rev.Stat. ch. 110, para. 12–619. There is also no doubt about the Belgian court's jurisdiction. Ingersoll concedes that the court had personal jurisdiction over it. *See* Ill.Rev.Stat. ch. 110, para. 12–621(a)(2). Nor is there a serious contention[3] over whether the Belgian court had subject matter jurisdiction. *See* Ill.Rev. Stat. ch. 110, para. 12–621(a)(3). In fact, it would be hard to imagine how the Belgian courts would not have subject matter jurisdiction over the employment dispute between the parties. This case involves an employee who lived and performed his employment duties in Belgium for a Belgian company.

Ingersoll's contention that "the judgment was rendered under a system which does not provide impartial tribunals or procedures compatible with the requirements of due process of law," Ill.Rev.Stat. ch. 110, para. 12–621(a)(1), is also without merit. In this regard, Ingersoll submits:

> The Belgian court was a relatively inadequate forum. The documents were all in English. The distance for witnesses was great. The Belgian courts, as Granger conceded, do not usually take oral testimony or allow cross-examination. Ingersoll could not compel Granger, a party, to give live testimony. It was important in this case to demonstrate through live testimony that the parties intended to rely exclusively on Illinois law and to provide benefits to Granger exclusively based on Illinois law and the agreement between the parties.

---

**3.** At page 5 of its reply brief, Ingersoll asserts that the Belgian court made no formal finding that it had jurisdiction. It makes this argument, however, with respect to its contention that Belgium was a "seriously inconvenient forum" for the trial of this matter. *See* Ill.Rev.Stat. ch. 110, para. 12–621(b)(6).

Appellant's Br. at 23. Ingersoll also states:

> The Belgian Labor Court does not allow cross-examination of a party or a party's witnesses if that party does not put himself or his witnesses before the tribunal to testify. The Belgian Labor Court does not allow live testimony to be taken absent the issuance of letters rogatory. Since Granger did not present himself in front of the Belgian Labor Court, Ingersoll was denied the ability to cross-examine Granger and impeach his credibility or refute his testimony. Ingersoll was also unable to gather and present evidence through live testimony other than by requesting and receiving letters rogatory.

*Id.* at 36. In response to this argument, the district court wrote:

> Ingersoll also intimates that it did not receive a "full and fair opportunity to present its claims" in Belgium and that the Belgium court denied it the right of "cross examination." All of this appears to be an attempt by Ingersoll to show that it was not afforded due process in the Belgian action.
>
> In response, Granger submits the affidavit of Edward Hayward, an experienced attorney familiar with the process afforded litigants in the courts of Belgium. Mr. Hayward points out that the Belgian Judicial Code granted Ingersoll the right to call witnesses as well as the right to take testimony outside of Belgim [sic] through letters rogatory. Ingersoll does not dispute the accuracy of Mr. Hayward's statements. Ingersoll never petitioned the Belgian court to hear live testimony and it never requested issuance of letters rogatory to take testimony outside of Belgium. Granger also

points out that, like Ingersoll, he chose to call no witnesses. Thus, given that there were no witnesses, due at least in part to Ingersoll's own tactical decision, Ingersoll cannot point to the lack of cross-examination as a violation of due process.

> Also, contrary to Ingersoll's speculation about the Belgian courts' predisposition to apply Belgian law, this court has been shown nothing to indicate that the Belgian court system provided Ingersoll with anything less than a full and fair opportunity to present its claims. Had this court acted first and applied Illinois law, Granger could hardly have advanced a similar due process claim to the Belgian courts. A forum court's decision that the forum's substantive law should govern a given dispute should not alone serve to negate the apparent fairness of the forum's court system. This court is unwilling to hold that Ingersoll was denied due process based solely on its unfounded speculation concerning "bias" of the Belgian courts.

*Ingersoll Milling Mach. Co.*, 631 F.Supp. at 317 (citation omitted).

In assessing this contention, we begin by noting that the Uniform Act does *not* require that the procedures employed by the foreign tribunal be *identical* to those employed in American courts. The statute simply requires that the procedures be *"compatible* with the requirements of due process of law." Ill.Rev.Stat. ch. 110, para. 12–621(a)(1) (emphasis supplied). The drafters of the Uniform Act made it clear that "a mere difference in the procedural system is not a sufficient basis for nonrecognition. A case of serious injustice must be involved." Unif. Foreign Money–Judgments Recognition Act § 4 comment, 13 U.L.A. 268 (1986).[4] The district court found that the procedures afforded Inger-

---

4. Indeed, the drafters made it clear that the language of the Uniform Act was intended to embody the rule "stated authoritatively by the Supreme Court of the United States in *Hilton v. Guyot,* 159 U.S. 113, 205, 16 S.Ct. 139, 159, 40 L.Ed. 95 (1895)." Unif. Foreign Money–Judgments Recognition Act § 4 comment, 13 U.L.A. 268 (1986). In that case, the Supreme Court pointedly noted:

> It is next objected that in those courts one of the plaintiffs was permitted to testify not

under oath, and was not subjected to cross-examination by the opposite party, and that the defendants were, therefore, deprived of safeguards which are by our law considered essential to secure honesty and to detect fraud in a witness; and also that documents and papers were admitted in evidence, with which the defendants had no connection, and which would not be admissible under our own system of jurisprudence. But it having been shown by the plaintiffs, and hardly denied by

soll by the Belgian judicial system were fundamentally fair and did not produce an injustice. That determination meets the standard of the Act. The similarity or dissimilarity of the Belgian procedures to our own is not the issue; the issue is only the basic fairness of the foreign procedures. Because Ingersoll has raised no meritorious challenges (as provided in Ill.Rev.Stat. ch. 110, para. 12–621(a)) to the conclusiveness of the Belgian judgment, we agree with the district court that that judgment was "conclusive," and enforceable, and thus met the basic requirements for recognition and enforcement under the Uniform Act.

b.

■ Ingersoll next argues that, even if the Belgian judgment is entitled to recognition, the district court should have exercised its discretion under paragraph 12–621(b) to deny such recognition. Paragraph 12–621(b) provides:

A foreign judgment need not be recognized if

(1) the defendant in the proceedings in the foreign court did not receive notice of the proceedings in sufficient time to enable him or her to defend;

(2) the judgment was obtained by fraud;

(3) the cause of action on which the judgment is based is repugnant to the policy of this State;

(4) the judgment conflicts with another final and conclusive judgment;

(5) the proceeding in the foreign court was contrary to an agreement between the parties under which the dispute in question was to be settled otherwise than by proceedings in that court; or

(6) in the case of jurisdiction based only on personal service, the foreign court was a seriously inconvenient forum for the trial of the action.

Ill.Rev.Stat. ch. 110, para. 12–621(b).

Ingersoll argues that Mr. Granger's cause of action on which his Belgian judg-

ment is based is "repugnant to the public policy" of Illinois, Ill.Rev.Stat. ch. 110, para. 12–621(b)(3), that the proceeding in Belgium was "contrary to an agreement between the parties under which the dispute in question was to be settled otherwise than by proceedings in that court," Ill.Rev.Stat. ch. 110, para. 12–621(b)(5), and that the Belgian court was a seriously inconvenient forum for the trial of the action, Ill.Rev.Stat. ch. 110, para. 12–621(b)(6).

The language of subparagraph (b) is not mandatory, but rather optional. In other words, even if Ingersoll's arguments with respect to the provisions of subparagraph (b) were valid, the statute does not require the district court to deny recognition of the judgment; it simply provides that it "may" deny recognition of that judgment. Here, the district court characterized Ingersoll's argument as "merely an improper attempt to relitigate the merits of this case." *Ingersoll Milling Mach. Co.*, 631 F.Supp. at 318. "Given the extended history of this dispute, combined with the fairness afforded the litigants in the Belgium courts, this court would not be inclined to deny enforcement of the judgment even if one of the six conditions of paragraph 12–621(b) were present here." *Id.* On this record, we see no reason to disagree with the district court. Certainly, the court's decision cannot be characterized as an abuse of discretion. Nevertheless, for the sake of completeness, we shall address briefly Ingersoll's principal arguments.

(1) Public Policy—Ingersoll argues that the Belgian judgment is contrary to the public policy of Illinois. It contends that Illinois has a strong public policy favoring freedom of contract. Moreover, it argues that the state has extensively regulated employment relationships, and that, therefore, employment relationships entered into in that state should be subjected to Illinois regulation. We find Ingersoll's arguments to be unpersuasive. The Belgian court did

the defendants, that the practice followed and the method of examining witnesses were according to the laws of France, we are not prepared to hold that the fact that the proce-

dure in these respects differed from that of our own courts is, of itself, a sufficient ground for impeaching the foreign judgment. *Hilton*, 159 U.S. at 204–05, 16 S.Ct. at 159.

nothing to abrogate the employment contract. It merely held that, because this employment relationship involved an employer doing business in Belgium through a Belgian resident for seven years, the relationship was subject to regulation by Belgium.

(2) Parties' Choice of Law—Ingersoll argues that the Belgian judgment contravenes the parties' agreement to be bound by the law of Illinois. We agree with the district court that paragraph 12–621(b)(5) is a choice of forum, rather than a choice of law, provision. The fact that the parties chose to subject the relationship to Illinois law would not prevent the enforcement of a judgment of a Belgian court in litigation involving that relationship. Paragraph 12–621(b)(5) addresses the situation where the parties agree that any litigation pertaining to the contract will be carried out in a particular forum. Thus, for Ingersoll's arguments to have any merit, the agreement between Mr. Granger and Ingersoll would have had to provide that any suit regarding the employment relationship be brought in the courts of Illinois. However, the contract has no such provision.

(3) Inconvenient Forum—Ingersoll argues that, under paragraph 12–621(b)(6), Belgium was a seriously inconvenient forum for the trial of this action. In the process of making this argument, Ingersoll quotes the official comment from the Uniform Laws Annotated and states that "jurisdiction over Ingersoll in Belgium was based on personal service of process." Appellant's Br. at 35.

The comment to the Uniform Act states:
The last ground for non-recognition under subsection (b) authorizes a court to refuse recognition and enforcement of a judgment rendered in a foreign country on the basis only of personal service when it believes the original action should have been dismissed by the court in the foreign country on grounds of forum non conveniens.

Unif. Foreign Money–Judgments Recognition Act § 4 comment, 13 U.L.A. 268–69 (1986). However, the Belgian court's jurisdiction was not based solely upon personal service. As the Belgian Labour Court of Appeal noted:

In light of [the] fact that the appellant Companies and INGERSOLL Inc. are managed by a nucleus of identical persons, the economic and financial overlapping of said Companies, their economic cohesion (since the organization and activities of subsidiaries must work toward an identical purpose: the American Company's development) all lead to the conclusion that they mey [sic] considered to be one and the enterprise for which the respondent did not cease to work from 1971 to 1977 in Belgium: the several members of said enterprise, which includes the appellant Companies, shared authority over the respondent. Hence, from 1971 until 1977, both appellant Companies were joint employers of the respondent, who pursued the fulfillment of a single contract. This situation notably explains the fact that part of the respondent's salary was paid by the Belgian Company (notably his monthly salary, even though it was paid by the American Company), while another part was paid by the American Company (fringe benefits including life insurance, retirement plans, etc.).

Because the contract in which the employee continuously fulfilled was the same, there can be no doubt that the parties had intended to bring their contractual relations before [the] State of Illinois jurisdiction. However, in view of the fact tha[t] the contract was fulfilled in Belgium from 1971 until 1977, the Belgian police and security laws applicable by vitue [sic] of Article 3 of the Civil Code, must therefore be taken into consideration; legal provisions dealing with work contracts which protect workers and which are compulsory ... make up such laws....

Appellant's App., Tab 11 at 11. Ingersoll voluntarily conducted business in Belgium. The obligation to submit to the jurisdiction of that nation's courts with respect to a labor dispute involving an employee stationed there on a long-term assignment can hardly be termed "seriously inconvenient."

(4) Right to Hearing—Finally, Ingersoll also argues that it was entitled to a hearing on its claims under paragraph 12–621(b). *See* Appellant's Br. at 24–26 (citing *Drexel Burnham Lambert Group, Inc. v. Galadari,* 777 F.2d 877 (2d Cir.1985), and *Hennessy v. Marshall,* 682 S.W.2d 340, 344–45 (Tex.App.1984)). We disagree. First, we note that the statute contains no such requirement. Second, the two cases upon which Ingersoll relies are clearly distinguishable. In both of those cases, the party challenging recognition raised issues that could not be resolved without some type of hearing. Here, Ingersoll has raised, in rather summary fashion, conclusory reasons why the Belgian judgment should not be recognized. Mr. Granger has rebutted Ingersoll's contentions with submissions from an attorney experienced in Belgian law. Rather than answering Mr. Granger's rebuttal, Ingersoll continues to rely on the same conclusory arguments. In view of Ingersoll's failure to raise more specific challenges to the recognition of the Belgian judgment, we cannot say that it was entitled to a hearing on its claims.

### 3. Denial of Ingersoll's Motion to Add Count IV

■ As noted earlier, after Mr. Granger sought enforcement of the Belgian judgment, Ingersoll sought to add Count IV to its complaint. Count IV demanded the return of payments that are not normally made to foreign employees by Ingersoll but that were nonetheless advanced to Mr. Granger. The district court denied Ingersoll's motion because it found no reason why this claim could not have been brought in the Belgian action. Ingersoll contends that this denial was improper. Mr. Granger contends that, because this claim could have been raised in the Belgian action, it should be barred under the doctrine of *res judicata.*[5]

As stated in the Uniform Act, "[t]he foreign judgment is enforceable in the same manner as the judgment of a sister state which is entitled to full faith and credit." Ill.Rev.Stat. ch. 110, para. 12–620. As such, the recognized judgment will bar an action on the same claim in the second forum under the doctrine of *res judicata.* The doctrine of *res judicata* "is designed to prevent parties from relitigating issues that have already been decided." *United States Secretary of Labor v. Cerro Copper Prod. Co.,* 795 F.2d 25, 26 (7th Cir. 1986) (per curiam). *Res judicata* applies when there is "(1) a final judgment on the merits in an earlier action; (2) an identity of the cause of action in both the earlier and the later suit; and (3) an identity of parties or their privies in the two suits." *Lee v. City of Peoria,* 685 F.2d 196, 199 (7th Cir.1982). Moreover, "[u]nder res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were *or could have been* raised in that action." *Allen v. McCurry,* 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980) (emphasis supplied); *see also Sea–Land Serv., Inc. v. Gaudet,* 414 U.S. 573, 578–89, 94 S.Ct. 806, 811–17, 39 L.Ed.2d 9 (1974); *Krison v. Nehls,* 767 F.2d 344, 348 (7th Cir.1985). As the district court stated:

> Over one year later [after Mr. Granger filed his suit in Belgium], on August 2, 1979, Ingersoll filed this action. Count I sought a declaratory judgment that Granger was not entitled to any termination benefits. Count II sought recovery of certain expenses Ingersoll had advanced Granger during the course of his employment. Thus, the substance of Ingersoll's Illinois suit mirrored that of Granger's Belgian suit.

*Ingersoll Milling Mach. Co.,* 631 F.Supp. at 315 (footnote omitted).

Our reading of the record leads to the same conclusion. It appears from the opinions of the Belgian courts that the same claims were involved in the two suits.[6]

---

5. Moreover, Mr. Granger has presented an affidavit from a lawyer experienced in Belgian law that supports Mr. Granger's claim that the two suits involve the same issues. In response, Ingersoll simply states, without citation of authori-

ty or explanation, that it was not required to bring this claim until after Mr. Granger sought recognition of the Belgian judgment.

6. Ingersoll makes no attempt to rebut Mr. Granger's submission (by the affidavit of an expert)

Furthermore, given the nature of the claims raised by Ingersoll in the Belgian action, we find no reason why the claims sought to be added in Count IV could not have been raised in the Belgian action. Thus, all the requirements of *res judicata* have been met. As a result, the district court properly denied Ingersoll's motion to add Count IV to its complaint.[7]

### B. *Final Judgment*

#### 1. Prejudgment Interest

■ Ingersoll argues that the district court improperly awarded Mr. Granger prejudgment interest on the Belgian judgment. It relies on Illinois law to the effect that prejudgment interest is only appropriate where there has been an unreasonable and vexatious delay in payment. *See General Dynamics Corp. v. Zion State Bank & Trust Co.*, 86 Ill.2d 135, 56 Ill.Dec. 51, 427 N.E.2d 131, 133–34 (1981). However, Ingersoll erroneously assumes in its argument that Illinois law governs the issue of whether prejudgment interest should be awarded. Because this case involves the recognition of a foreign judgment, the proper inquiry is whether an Illinois court would enforce the Belgian court's award of prejudgment interest regardless of its own law on the subject.

We believe Illinois would recognize the Belgian award of prejudgment interest. Paragraph 12–620 of the Uniform Act provides that "[t]he foreign judgment is enforceable in the same manner as the judgment of a sister state which is entitled to full faith and credit." Ill.Rev.Stat. ch. 110 para. 12–620. In determining the preclu-

sive effects of prior judgments of a sister state, we have stated that the second forum must give the same recognition to that judgment as it would receive in the courts of the state in which it was rendered. *See Cook County v. Midcon Corp.*, 773 F.2d 892 (7th Cir.1985); *Krison*, 767 F.2d at 347–48.[8] The Belgian judgment includes prejudgment interest. Full recognition and enforcement of that judgment includes an award of prejudgment interest. *See Hunt*, 492 F.Supp. at 900–01 (English judgment allowing prejudgment interest enforceable in Texas even assuming that the prejudgment interest was inappropriate under Texas law); *cf. Somportex Ltd. v. Philadelphia Chewing Gum Corp.*, 318 F.Supp. 161, 168–69 (E.D.Pa.1970) (English judgment, which included in the award of damages an amount for loss of good will and counsel fees, is enforceable under Pennsylvania law even though loss of good will and attorney fees would not be recoverable in a similar action instituted in Pennsylvania), *aff'd*, 453 F.2d 435 (3d Cir.1971), *cert. denied*, 405 U.S. 1017, 92 S.Ct. 1294, 31 L.Ed. 2d 479 (1972); *Compania Mexicana Rediodifusora Franteriza v. Spann*, 41 F.Supp. 907 (N.D.Tex.1941) (Mexican award of attorneys' fees and costs of litigation enforceable in Texas even though Texas does not authorize the imposition of such costs), *aff'd*, 131 F.2d 609 (5th Cir.1942).

The mere fact that Belgian law permits prejudgment interest while Illinois law might not[9] is not fatal to the Belgian award. *Hunt*, 492 F.Supp. at 901; *Somportex Ltd.*, 318 F.Supp. at 168. Under the Uniform Act, Illinois has the *option* of refusing to enforce a *foreign country*

---

that the judgment of the Cour de Cassation is final. In fact, Mr. Granger's Belgian law expert, Mr. Hayward, states in his affidavit that the judgment of the Labour Court of Appeal was a final and enforceable judgment. Second, there is no dispute that both Mr. Granger and Ingersoll were parties to both suits. Finally, there seems to be no issue as to the identity of the causes of action in both the Belgian suit and the suit brought in the district court.

7. Ingersoll also argues that Illinois follows the rule of reciprocity. However, as noted by the district court, the drafters of the Uniform Act chose not to enact a reciprocity requirement.

*Ingersoll Milling Mach. Co. v. Granger*, 631 F.Supp. 314, 319 (N.D.Ill.1986).

8. *See also Restatement (Second) of Conflict of Laws* § 101 ("A valid judgment for the payment of money will be enforced in other states ... in the amount for which it is enforceable in the state where it was rendered.") and comment a ("The rule of this Section is applicable ... to judgments rendered in foreign nations.").

9. We do not need to decide whether Ingersoll's characterization of Illinois law on the appropriateness of an award of prejudgment interest in a case such as this is accurate.

judgment if it determines that the judgment is contrary to its public policy. Ill. Rev.Stat. ch. 110, para. 12–621(b)(3). However, there is no indication that Illinois would consider a mere difference in law to be a sufficiently serious public policy basis to refuse recognition and enforcement of a foreign judgment. Ingersoll has suggested absolutely no reason why we should presume that Illinois would deviate from the usual approach that:

> Enforcement of a judgment of a foreign court based on the law of the foreign jurisdiction does not offend the public policy of the forum simply because the body of foreign law upon which the judgment is based is different from the law of the forum.... The very idea of a law of conflicts of laws presupposes differences in the laws of various jurisdictions and that different initial results may be obtained depending upon whether one body of law is applied or another.

*Toronto–Dominion Bank v. Hall,* 367 F.Supp. 1009, 1016 (E.D.Ark.1973).

2. Exchange Rate

■ Ingersoll also challenges the choice of the exchange rate applied by the district court to the Belgian judgment. That judgment was, of course, originally denominated in Belgian francs. The district court applied the "judgment-day rule"; it applied the exchange rate of Belgian francs to U.S. dollars on the day of the entry of its judgment, July 3, 1986.

We agree with the district court that, on this issue, it "must apply the currency conversion rule employed by the courts of the state in which the action was brought." *Newmont Mines Ltd. v. Hanover Ins. Co.,* 784 F.2d 127, 138 (2d Cir.1986). The parties were unable to cite any Illinois authority with respect to the appropriate conversion rate to the district court. Under these circumstances, we can hardly fault the district court for assuming that Illinois would follow the widely accepted practice of employing the judgment-day rule when, as here, the breach occurred in the foreign country and the cause of action originally accrued there. *See Shaw, Savill, Albion & Co. v. The Fredericksburg,* 189 F.2d 952,

955 (2d Cir.1951); *Cronel Watch, S.A. v. Peterson State Bank,* 565 F.Supp. 259, 262 n. 3 (N.D.Ill.1983); *Laminoirs–Trefileries–Cableries De Lens, S.A. v. Southwire Co.,* 484 F.Supp. 1063, 1070 (N.D.Ga.1980). *See generally In re Good Hope Chem. Corp.,* 747 F.2d 806, 812 (1st Cir.1984), *cert. denied,* 471 U.S. 1102, 105 S.Ct. 2328, 85 L.Ed.2d 845 (1985).

3. Ingersoll's Right to Benefit From the Set-off Awarded to the Belgian Subsidiary

■ Finally, we see no merit to Ingersoll's contention that it is entitled to set-off the amount that the Belgian court awarded the Belgian Subsidiary on its counterclaim against Mr. Granger. While the Belgian court made Mr. Granger's award against Ingersoll and the Belgian Subsidiary joint and several, it rendered separate judgments for Ingersoll and for the Belgian Subsidiary on their respective counterclaims against Mr. Granger. Ingersoll may seek recognition and enforcement of only its judgment.

## CONCLUSION

We hold that the district court properly recognized the judgment of the Belgian court and, as such, we agree with its determination that the judgment barred, under the principles of *res judicata,* further litigation of Ingersoll's claim in the district court. Furthermore, we hold that Mr. Granger was entitled to prejudgment interest as required by Belgian law and that the district court's use of the judgment-day rule was appropriate under the facts of this case. Finally, we reject Ingersoll's argument that it was entitled to set-off the amount that the Belgian court awarded to its Belgian Subsidiary.

AFFIRMED.